IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

| | | |
|---|---|---|
| HVLPO2, LLC, a Nebraska limited liability company, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Case No..: _____ |
| OXYGEN FROG, LLC, a Florida limited liability company; and SCOTT D. FLEISCHMAN, | ) ) ) ) | **JURY DEMAND** |
| Defendants. | ) ) ) ) ) | |

## COMPLAINT

Plaintiff, HVLPO2, LLC, by and through its undersigned attorneys, for its Complaint against Defendants Oxygen Frog, LLC, and Scott D. Fleischman, alleges as follows:

### THE PARTIES

1.     Plaintiff HVLPO2, LLC ("HVLPO2", "Plaintiff", or "Plaintiff HVLPO2") is a limited liability company organized and existing under the laws of the State of Nebraska, with its principal place of business at 3211 E. Summit Boulevard, Lincoln, Nebraska 68502.

2.     On information and belief, and according to records maintained by the Division of Corporations of the Florida Department of State, Defendant Oxygen Frog, LLC ("Oxygen Frog" or "Defendant Oxygen Frog") is a limited liability company

organized under the laws of the State of Florida with a mailing address and principal address at 3128 Hawks Landing Drive, Tallahassee, Florida 32309.  On information and belief, Defendant Oxygen Frog conducts business in this judicial district and/or engages in activities directed at this judicial district.  On information and belief, Oxygen Frog was organized on January 2, 2015.

3.     On information and belief, and according to records maintained by the Division of Corporations of the Florida Department of State, Stillwater Glass, LLC ("Stillwater Glass") is currently an inactive limited liability company that was organized under the laws of the State of Florida, which has or had a mailing address and principal address at 3128 Hawks Landing Drive, Tallahassee, Florida 32309.  On information and belief, Stillwater Glass conducts business in this judicial district and/or engages in activities directed at this judicial district.  On information and belief, Stillwater Glass was organized on October 7, 2013, and was administratively dissolved on September 26, 2014.

4.     According to Defendant Scott D. Fleischman, Defendant Oxygen Frog is the successor of Stillwater Glass.

5.     On information and belief, Defendant Scott D. Fleischman ("Fleischman" or "Defendant Fleischman") is an individual residing in Tallahassee, Florida and is an owner, officer, agent, and/or employee of Defendant Oxygen Frog.  On information and belief, Defendant Fleischman is an owner, officer, agent, and/or employee of Stillwater Glass.  On information and belief, Defendant Fleischman conducts business in this judicial district and/or engages in activities directed at this judicial district.

2

6.     On information and belief, Defendant Fleischman has engaged and continues to interchangeably engage in activities in his individual capacity and as an agent, employee, or officer of Defendant Oxygen Frog and Stillwater Glass.

7.     On information and belief, Defendant Fleischman has interchangeably used and/or continues to interchangeably use communication accounts, in interstate commerce, that are associated with Defendant Oxygen Frog, Stillwater Glass, and/or Defendant Fleischman's personal communication account(s) to engage in activities directed at this judicial district, and more specifically directed at Plaintiff giving rise to this action.

8.     On information and belief, Defendant Fleischman uses, or has used, the username "Scott Fleischman (Oxygen Frog)" for Defendant Fleischman's personal Facebook account.

## JURISDICTION AND VENUE

9.     Plaintiff re-alleges and incorporates by reference the allegations set forth in Paragraphs 1 through 8 above, as if fully set forth herein.

10.     This is an action for, *inter alia*, patent infringement arising under 35 U.S.C. §§ 101 et seq.  This Court has subject matter jurisdiction under 28 U.S.C. §§ 1331 and 1338(a).  As to Plaintiff's non-patent infringement claims that are cognizable under substantive state law, this Court has supplemental subject matter jurisdiction under 28 U.S.C. § 1367.

11.     This Court has specific and general personal jurisdiction over Defendants because Defendants have committed acts directed at this judicial district giving rise to this action and have established minimum contacts within this judicial district such that

the exercise of jurisdiction over Defendants would not offend traditional notions of fair play and substantial justice.

12.     Venue is proper in this judicial district pursuant to 28 U.S.C. §§ 1391(b) and (c) and § 1400(b).

**OVERVIEW**

13.     Plaintiff is the assignee of United States Patent Nos. 8,702,840 (the "'840 Patent"), 8,876,941 (the "'941 Patent"), and 9,139,434 (the "'434 Patent") and United States Patent Application No. 14/502,279 (the "Expected Fourth Patent").

14.     The '840 Patent and the '941 Patent cover methods for managing an oxygen generating system as set forth in the patented claims of such patents.

15.     The '434 Patent covers apparati for managing an oxygen generating system as set forth in the patented claims of such patent.

16.     On information and belief, the Expected Fourth Patent will cover apparati for managing an oxygen generating system as set forth in the expected-to-be patented claims of the Expected Fourth Patent.

17.     Plaintiff manufactures and sells oxygen generating system products, which are protected by the '840 Patent, the '941 Patent, and the '434 Patent and are expected to be protected by the Expected Fourth Patent.

18.     One or more of the Defendants are competitors with Plaintiff and manufacture, offer to sell, and sell products and equipment for oxygen generating systems.

19.     One or more of the Defendants have manufactured, sold, offered for sale, operated, and demonstrated the use of equipment or products that infringe Plaintiff's

4

'840 Patent, '941 Patent, and '434 Patent and that would infringe the Expected Fourth Patent.

20.     Defendants have instructed other directly infringing entities as to how to set up and operate oxygen generating systems that directly infringe Plaintiff's '840 Patent, '941 Patent, and '434 Patent and that would directly infringe the Expected Fourth Patent.

21.     On information and belief, Defendants have aided other directly infringing entities with setting up and operating oxygen generating systems that directly infringe Plaintiff's '840 Patent, '941 Patent, and '434 Patent and that would directly infringe the Expected Fourth Patent.

22.     Defendants have directly and indirectly infringed the '840 Patent, the '941 Patent, and the '434 Patent.   On information and belief, Defendants' actions, if continued, would directly infringe the Expected Fourth Patent.

23.     Defendants' acts of infringement have benefitted one or more of the Defendants and injured Plaintiff.

24.     Defendants have willfully infringed Plaintiff's '840 Patent, '941 Patent, and '434 Patent.

25.     Defendant Oxygen Frog and Defendant Fleischman have made false and defamatory and/or commercially disparaging statements about Plaintiff and, as such, have committed deceptive and/or unfair trade practices.  (*See* ¶ 73(a)-(e), *below*.)

26.     The false and defamatory and/or commercially disparaging statements made by one or more of the Defendants have benefitted one or more of the Defendants and injured Plaintiff.

27.     Defendant Oxygen Frog and Defendant Fleischman have infringed Plaintiff's trademark of "HV60" and have committed deceptive and/or unfair trade practices by using Plaintiff's trademark of "HV60".

28.     The trademark infringement and deceptive trade practices by Defendant Oxygen Frog's and/or Defendant Fleischman's use of "HV60" have benefitted one or more of the Defendants and injured Plaintiff.

## PLAINTIFF HVLPO2 AND THE PATENTS

29.     On April 22, 2014, the '840 Patent, entitled METHOD AND APPARATUS FOR MANAGING OXYGEN GENERATING SYSTEM, was duly and legally issued by the United States Patent and Trademark Office.  A true and correct copy of the '840 Patent is attached hereto as Exhibit 1, and is incorporated herein by reference.

30.     On November 4, 2014, the '941 Patent, entitled METHOD AND APPARATUS FOR MANAGING OXYGEN GENERATING SYSTEM, was duly and legally issued by the United States Patent and Trademark Office.  A true and correct copy of the '941 Patent is attached hereto as Exhibit 2, and is incorporated herein by reference.

31.     On September 22, 2014, the '434 Patent, entitled METHOD AND APPARATUS FOR MANAGING OXYGEN GENERATING SYSTEM, was duly and legally issued by the United States Patent and Trademark Office.  A true and correct copy of the '434 Patent is attached hereto as Exhibit 23, and is incorporated herein by reference.

32.     On May 17, 2016, the issue fee was paid for the Expected Fourth Patent. On information and belief, the Expected Fourth Patent entitled METHOD AND APPARATUS FOR MANAGING OXYGEN GENERATING SYSTEM, will be duly and

legally issued by the United States Patent and Trademark Office as United States Patent No. 9,372,488.

33.     Plaintiff is the owner and assignee of all right, title, and interest in and to the '840 Patent, the '941 Patent, and the '434 Patent, including the right to assert all causes of action arising under such patents and the right to any remedies for infringement of such patents.  Plaintiff is the owner and assignee of all right, title, and interest in and to the Expected Fourth Patent.

34.     The '840 Patent includes three independent claims, as well as various dependent claims. For example, one of the independent claims is as follows:

> 1.     A method for managing an oxygen generating system, the oxygen generating system having an oxygen storage tank, an oil-less air compressor, and at least two groups of at least one oxygen generator, the at least two groups of at least one oxygen generator including a first group of at least one oxygen generator and a second group of at least one oxygen generator, the oxygen generating system configured for supplying a sustained flow of a gaseous mixture comprising mostly oxygen, the method comprising:
>
> receiving electrical power;
>
> sensing a first pressure to be less than or equal to a first startup threshold pressure, said first pressure associated with a gaseous pressure of the oxygen storage tank;
>
> completing a first circuit, the first circuit for providing electrical power to a first group of at least one oxygen generator;
>
> providing electrical power to the first circuit;
>
> providing electrical power to an oil-less air compressor;

sensing a second pressure to be less than or equal to a second startup threshold pressure, said second pressure associated with a gaseous pressure of the oxygen storage tank, wherein the second startup threshold pressure is greater than the first startup threshold pressure;

completing a second circuit, the second circuit for providing power to a second group of at least one oxygen generator;

providing electrical power to the second circuit;

sensing a third pressure to be greater than or equal to a first shutoff threshold pressure, said third pressure associated with a gaseous pressure of the oxygen storage tank;

opening the first circuit;

cutting power to the first circuit;

sensing a fourth pressure to be greater than or equal to a second shutoff threshold pressure, said fourth pressure associated with a gaseous pressure of the oxygen storage tank, wherein the second shutoff threshold pressure is greater than the first shutoff threshold pressure;

opening the second circuit;

cutting power to the second circuit; and

cutting power to the oil-less air compressor.

35. The '941 Patent includes three independent claims, as well as various dependent claims. For example, one of the independent claims is as follows:

7. A method for managing an oxygen generating system, wherein the oxygen generating system includes a controller device, an oxygen storage tank, an oil-less air compressor, and at least one group of at least two oxygen generators, the oxygen generating system configured for supplying a sustained flow of a gaseous mixture comprising mostly oxygen, the method comprising:

8

controlling at least one group circuit based at least upon a pressure of the oxygen storage tank, each of the at least one group circuit for providing power to a particular group of the at least one group of at least two oxygen generators; and

controlling a circuit for providing power to the oil-less air compressor.

36. The '434 Patent includes one independent claim, as well as various dependent claims. The independent claim is as follows:

1. An apparatus of an oxygen generating system, the oxygen generating system having an oxygen storage tank, an oil-less air compressor, and at least two banks of at least two oxygen generators, the at least two banks of at least two oxygen generators including a first bank of at least two oxygen generators and a second bank of at least two oxygen generators, comprising:

a controller device, the controller device being configured to:

sense a pressure of the oxygen storage tank or receive information associated with the pressure of the storage tank;

controllably switch on or off a first circuit based upon the pressure of the oxygen storage tank, the first circuit configured to provide power to the first bank of at least two oxygen generators, the first circuit receiving power from a first electrical outlet connected to a first circuit breaker, the first electrical outlet providing up to 2400 watts of power, wherein a total amperage requirement of the first bank of at least two oxygen generators is less than or equal to 20 amperes;

controllably switch on or off a second circuit based upon the pressure of the oxygen storage tank, the second circuit configured to provide power to the second bank of at least two oxygen generators, the second circuit receiving power from a second electrical outlet connected to a second circuit breaker, the

second electrical outlet providing up to 2400 watts of power and the second circuit breaker configured to operate independently of the first circuit breaker, wherein a total amperage requirement of the second bank of at least two oxygen generators is less than or equal to 20 amperes; and

controllably switch on or off the oil-less air compressor based upon an on or off state of the first circuit and an on or off state of the second circuit,

wherein the oxygen generating system is configured for supplying a sustained flow of a gaseous mixture comprising mostly oxygen in a range of 15 to 25 liters per minute at 137 to 207 kilopascals.

37.    On information and belief, the Expected Fourth Patent will include four independent claims, as well as various dependent claims. On information and belief, the independent claims will be as follows:

1.    An apparatus for managing an oxygen generating system, the oxygen generating system configured for supplying a sustained flow of a gaseous mixture comprising mostly oxygen, the apparatus comprising:

a controller device configured to:
    receive a first pressure signal associated with a first pressure;
    determine the first pressure to be less than or equal to a startup threshold pressure, said first pressure associated with a gaseous pressure of an oil-less tank;
    send a signal to switch a first circuit on, said first circuit for providing electrical power to a bank of at least two oxygen generators;
    send a signal to switch a second circuit on, said second circuit for providing electrical power to an oil-less air compressor;
    receive a second pressure signal associated with a second pressure;

determine the second pressure to be greater than or
equal to a shutoff threshold pressure, said second
pressure associated with a gaseous pressure of
the oil-less tank;

send a signal to switch the first circuit off; and

send a signal to switch the second circuit off.

* * * * *

7.   An apparatus for managing an oxygen
generating system, wherein the oxygen generating system
includes an oxygen storage tank, a compressor, and at least
one group of at least two oxygen generators, the oxygen
generating system configured for supplying a sustained flow
of a gaseous mixture comprising mostly oxygen, the
apparatus comprising:

a controller device configured to:

control at least one group circuit based at least upon
a pressure of the oxygen storage tank, each of the
at least one group circuit for providing power to a
particular group of the at least one group of at
least two oxygen generators; and

control a circuit for providing power to the
compressor.

* * * * *

12.   An apparatus for managing a modularly
expandable oxygen generating system, the modularly
expandable oxygen generating system including a main
oxygen generating system configured to communicate with
at least one expansion oxygen generating system, the
apparatus comprising:

a controller device configured for:

managing the main oxygen generating system,
wherein the main oxygen generating system
includes a main system oxygen storage tank, a
main system oil-less air compressor, and at least
one main system group of at least two oxygen
generators, the main oxygen generating system
configured for supplying a sustained flow of a
gaseous mixture comprising mostly oxygen,
including:

controlling at least one main system circuit, each
of the at least one main system circuit for
providing power to a particular group of the at
least one main system group of at least two
oxygen generators; and

11

controlling a first circuit for providing power to the main system oil-less air compressor; and

managing a particular expansion oxygen generating system of the at least one expansion oxygen generating system, wherein the particular expansion oxygen generating system includes a particular expansion system oxygen storage tank, a particular expansion system oil-less air compressor, and at least one particular expansion system group of at least two oxygen generators, the particular expansion oxygen generating system configured for supplying a sustained flow of a gaseous mixture comprising mostly oxygen, including:

controlling at least one expansion system circuit, each of the at least one expansion system circuit for providing power to a particular group of the at least one expansion system group of at least two oxygen generators; and

controlling a second circuit for providing power to the particular expansion system oil-less air compressor.

\* \* \* \* \*

21.   An apparatus for managing an oxygen generating system, wherein the oxygen generating system includes an oxygen storage tank, a compressor, and at least one group of at least two oxygen generators, the oxygen generating system configured for supplying a sustained flow of a gaseous mixture comprising mostly oxygen, the apparatus comprising:

means for controlling at least one group circuit based at least upon a pressure of the oxygen storage tank, each of the at least one group circuit for providing power to a particular group of the at least one group of at least two oxygen generators; and

means for controlling a circuit for providing power to the compressor.

38.   Today, Plaintiff manufactures and sells oxygen generating systems that are covered by the '840 Patent, the '941 Patent, and the '434 Patent.  Today, on information and belief, Plaintiff manufactures and sells oxygen generating systems that will be covered by the Expected Fourth Patent.

**PLAINTIFF HVLPO2 AND ITS TRADEMARKS**

39.     Plaintiff has continuously sold, and now continues to sell, its oxygen generating systems nationally under at least the following trademarks:   "HV60", "HV30", "HVO60", "HVO30", "High Volume O2", "HVO", and "High Volume Oxygen".

40.     Since at least May of 2012, Plaintiff has continuously sold, and now continues to sell, various models of its "High Volume Oxygen" systems nationally under the trademark of "HV60".

41.     All rights and interests in the trademark of "HV60" are owned by the Plaintiff.

42.     Plaintiff has used and owns the trademark of "HV60" and has used "HV60" continuously on oxygen generating systems, advertising materials, and/or Plaintiff's website since at least May of 2012.

43.     Plaintiff promotes and has promoted the use of oxygen generating systems under the trademark of "HV60" since at least May of 2012.

44.     By virtue of the goodwill developed by Plaintiff's activities and because the trademark of "HV60" is well-known among customers of Plaintiff, the mark has a value in excess of $75,000 exclusive of interest and costs.

**DEFENDANTS' PRODUCTS AND CONDUCT**

45.     On information and belief, Defendant Oxygen Frog and/or Defendant Fleischman manufacture, use, demonstrate, offer for sale, sell, advertise, provide technical support, install, and instruct others how to use and install its "OxygenFrog", "OxygenFrog Expansion", and "OxygenFrog HPC [(High Performance Compressor pack)]" (collectively referred to as "Oxygen Frog's Products").   For example, Oxygen Frog's website demonstrates various activities related to Defendant Oxygen Frog's

13

and/or Defendant Fleischman's manufacture, use, demonstration, offer for sale, selling, advertising, technical support, and instruction to others of how to use and install the Oxygen Frog Products.  A printed-to-pdf reproduction of Oxygen Frog's home page (http://www.oxygenfrog.com/home.html), as it existed on May 6, 2015, is attached as Exhibit 3 and incorporated herein by reference. (Plaintiff notes that the embedded "Oxygen Frog at Tobacco Leaf walkthrough" video on the http://www.oxygenfrog.com/home.html website does not reproduce in pdf format).  A printed-to-pdf reproduction of Oxygen Frog's Oxygen Systems web page (http://www.oxygenfrog.com/oxygen-systems.html), as it existed on May 6, 2015, is attached as Exhibit 4 and incorporated herein by reference.  A printed-to-pdf reproduction of Oxygen Frog's HPC Compressor Pack web page (http://www.oxygenfrog.com/hpc-compressor-pack.html), as it existed on May 6, 2015, is attached as Exhibit 5 and incorporated herein by reference.  A printed-to-pdf reproduction of Oxygen Frog's Pricing web page (http://www.oxygenfrog.com/pricing.html), as it existed on May 6, 2015, is attached as Exhibit 6 and incorporated herein by reference.  A printed-to-pdf reproduction of Oxygen Frog's Contact web page (http://www.oxygenfrog.com/contact.html), as it existed on May 6, 2015, is attached as Exhibit 7 and incorporated herein by reference.

46.    On information and belief, Oxygen Frog's home page (Exhibit 3), as of May 6, 2015, stated in part:

> The OxygenFrog is a versatile programmable pressure controller for shop or laboratory use.  It is suitable for any non-corrosive, non-flammable gas.  It can handle pressures from -14.7 psi to +147psi.  Control output is achieved through two independently programmable 15 amp, 115 volt circuits.

                                    *        *        *

The OxygenFrog is particularly well suited to controlling on-site, on-demand oxygen generation for welding and flameworking.   Please see our page on oxygen system application.

Expanded and custom units are available.   Please contact us regarding your specific application.

47.    On information and belief, Oxygen Frog's Oxygen Systems web page

(Exhibit 4), as of May 6, 2015, stated in part:

The OxygenFrog will automatically control your oxygen concentrators and compressors to provide you with unlimited, on-demand oxygen.   It is suitable for small single torch studios and full production shops.   It is infinitely expandable.
                                    *        *        *
OxygenFrog Specs:
      -  Two 115v, 15 amp circuits
      -  Enough power to run 50 LPM of oxygen
         Concentrators
                                    *        *        *
OxygenFrog expansion box:
      -  Three 115v, 15 amp circuits
      -  Enough power to run an additional 80 LPM of
         oxygen concentrators
      -  An infinite number of expansion boxes can be
         operated from a single OxygenFrog.
                                    *        *        *
The main purpose of the storage tank is to smooth out operation of the concentrators and compressor.   At 100 psi, a 120 gallon storage tank will contain only about 60 cubic feet (1680 liters) of usable oxygen.… When the concentrators are running, and the torch is on, the torch consumption can exceed the output of the concentrators until this 60 cubic feet of "slack" is exhausted.   When oxygen usage goes back below the concentrator output, the tank will begin to fill back up.…

If you find that you are running short on oxygen, just add another concentrator.

48.     On information and belief, Oxygen Frog's Pricing web page (Exhibit 6), as of May 6, 2015, stated in part:

>   Pricing information
>   OxygenFrog                                        $1200
>   Oxygen Frog Expansion                              $750
>   OxygenFrog with HPC                               $2975

49.     On information and belief, Defendant Oxygen Frog and Defendant Fleischman use an email address ("stillwaterglass8@__[REDACTED]__", which has been redacted), which is associated with, owned by, and/or operated by Stillwater Glass, as the primary business email address for business operations and correspondence by Defendant Oxygen Frog.   On information and belief, the email address ("stillwaterglass8@__[REDACTED]__", which has been redacted), which is associated with, owned by, and/or operated by Stillwater Glass, is used for, *inter alia*, technical support of Oxygen Frog Products.   On information and belief, Oxygen Frog's Contact web page (Exhibit 7), as of May 6, 2015, stated in part:

>   OxygenFrog LLC
>
>   Technical or sales question, please contact us at:
>
>   +1.850__[REDACTED]__
>   stillwaterglass8@__[REDACTED]__

50.     On information and belief, Defendant Oxygen Frog and/or Defendant Fleischman offered for sale and/or sold Oxygen Frog Products throughout the United States in interstate commerce, including offers for sale and/or sales directed at this jurisdictional district, through a website and/or catalog owned or operated by ABR Images, Inc. (d/b/a ABR Imagery) (herein after referred to as "ABR").   On information

and belief, ABR is an Indiana corporation that purports to be "AMERICA'S #1 GLASS

SUPPLY RESOURCE".   A printed-to-pdf reproduction of one of ABR's web pages, as it

existed on or about March 30, 2015, is attached as Exhibit 8 and incorporated herein by

reference. On or about March 30, 2015, ABR's webpage (Exhibit 8) stated in part:

> Using the OxygenFrog for oxygen system management is a
> simple and straightforward process. The oxygen is extracted
> from the air using one or more oxygen concentrators. The
> oxygen is collected from the concentrators using an oilless
> compressor and stored in a tank for on-demand use. The
> OxygenFrog controls and provides power to the
> concentrators and compressor according to user
> programmed pressure setpoints.

51.   On information and belief, Defendant Oxygen Frog Defendant and/or

Defendant Fleischman have provided and/or installed Oxygen Frog Products at

Tobacco Leaf Smokeshop & Glass Gallery located at 2256 W. Pensacola Street,

Tallahassee, Florida 32304.   On information and belief, as of May 6, 2015, Oxygen

Frog's Home web page (Exhibit 3) included an embedded YouTube video, which

purports to show a walkthrough of an Oxygen Frog system installed at the "Tobacco

Leaf studios" at the Tobacco Leaf Smokeshop & Glass Gallery.   On information and

belief, the video is narrated by Fleischman.   On information and belief, in the video,

Fleischman states:

> "Hi, this is Scott Fleischman, owner of OxygenFrog.com, and
> I am here at the Tobacco Leaf studios in Tallahassee,
> Florida, and I just want take you through what I think is a fine
> example of an Oxygen Frog system.  Let me show you the
> process diagram.  It's real simple, here.  Basically, what we
> have is, you've got the oxygen concentrator bank that is fed
> to a compressor, and that collects the oxygen, sends it
> through a check valve—that's an important component is
> that check valve—into a storage tank and then out to the

studio manifold. And, it's all controlled, here, by the OxygenFrog. So let me take you through this real quick. As you can see, here, we've got, in this case, we've got five eight-liter concentrators, and these are being fed into a Gast 81R. I really like this compressor. It's reasonably priced. It's very powerful. It can handle a lot more concentrators than this. And let's see, that comes up. And you can see the check valve is located right, there. And then we come up to the real brains of the system. This is the actual pressure transmitter. You can see right now the set point is at 100. That is our high set point. And we have the low set point set at 80. So what is going to happen here, when we pull the system down—right now we are at 84 psi—when we pull this down to about 80 psi, everything's going to come on. The compressor is going to come on, all the concentrators. You'll start collecting that oxygen, and then we are going to send it up—send it up through, here. And this goes out to—actually—a 120 gallon propane tank which has been cleaned out and repurposed to store the oxygen in it. The power is supplied to the units through the power box, here—to the OxygenFrog power box. And that's pretty much it. It's real simple to put one of these together. It's real reasonably priced. And if you have any questions, you can always contact me. I'm Scott Fleischman, the owner of Oxygen Frog. Thank you very much."

52.     On information and belief, Defendant Oxygen Frog's Facebook website demonstrates various activities related to Defendant Oxygen Frog's manufacture, use, demonstration, offer for sale, selling, advertising, technical support, installation, and/or instruction to others of how to use and install the Oxygen Frog Products. A printed-to-pdf reproduction of Defendant Oxygen Frog's Facebook home page (https://www.facebook.com/pages/OxygenFrog/781861315226489), as it existed on May 6, 2015, is attached as Exhibit 9 and incorporated herein by reference. A printed-to-pdf reproduction of Defendant Oxygen Frog's January 30, 2015 Facebook post (https://www.facebook.com/781861315226489/photos/a.781863835226237.107374182

7.781861315226489/781863615226259/?type=1&theater), as it existed on May 7, 2015, is attached as Exhibit 10 and incorporated herein by reference.  A printed-to-pdf reproduction of Defendant Oxygen Frog's February 19, 2015 Facebook post (https://www.facebook.com/permalink.php?story_fbid=792404560838831&id=78186131 5226489), as it existed on May 6, 2015, is attached as Exhibit 11 and incorporated herein by reference.  A printed-to-pdf reproduction of Defendant Oxygen Frog's April 7, 2015                                        Facebook                                        post (https://www.facebook.com/permalink.php?story_fbid=817738134972140&id=78186131 5226489), as it existed on May 6, 2015, is attached as Exhibit 12 and incorporated herein by reference.  A printed-to-pdf reproduction of Defendant Oxygen Frog's April 20, 2015                                        Facebook                                        post (https://www.facebook.com/781861315226489/photos/a.824497367629550.107374182 8.781861315226489/824497260962894/?type=1&theater), as it existed on May 6, 2015, is attached as Exhibit 13 and incorporated herein by reference.  A printed-to-pdf reproduction of Defendant Oxygen Frog's May 2, 2015 Facebook post (https://www.facebook.com/781861315226489/photos/a.824497367629550.107374182 8.781861315226489/830635793682374/?type=1&theater), as it existed on May 6, 2015, is attached as Exhibit 14 and incorporated herein by reference.

53.    On information and belief, Defendant Oxygen Frog's February 19, 2015 Facebook post (Exhibit 11), as of May 6, 2015, stated in part: "The OxygenFrog is a process controller that can be used to set up an on-demand unlimited oxygen system."

54.    On information and belief, Defendant Oxygen Frog's May 2, 2015 Facebook post (Exhibit 14), as of May 6, 2015, stated in part:

OxygenFrog is now offering complete oxygen systems. Everything you need in one package, one price. Concentrators, OxygenFrog controller, OxygenFrog HPC compressor pack, storage tank, and all fittings, delivered to your door.
30 LPM / 60 Gallon $5625 + $300 S&H
50 LPM / 60 Gallon $6825 + $350 S&H

55.    On information and belief, one or more of the Defendants have converted propane tanks into oxygen storage tanks.

56.    On information and belief, one or more of the Defendants have instructed customers and other infringers to convert propane tanks into oxygen storage tanks.

57.    On information and belief, using oxygen storage tanks converted from propane tanks is unsafe, is dangerous, and/or fails to comply with industry standards.

58.    On information and belief, one or more of the Defendants' use of oxygen storage tanks that have been converted from propane tanks and/or one or more of the Defendants' instruction to customers and others has imputed or will impute a belief by customers and potential customers of HVLPO2's products that Plaintiff HVLPO2's products are dangerous, unsafe, and/or fail to comply with industry standards.

59.    On information and belief, Stillwater Glass manufactures, uses, demonstrates, offers for sale, sells, advertises, provides technical support, installs, and/or instructs others how to use and install Oxygen Frog's Products.  For example, Stillwater Glass's Facebook website demonstrates various activities related to Stillwater Glass' manufacture, use, demonstration, offers for sale, selling, advertising, technical support, installation, and/or instruction to others of how to use and install the Oxygen Frog Products.  A printed-to-pdf reproduction of Stillwater Glass' Facebook home page (https://www.facebook.com/stillwater.glass), as it existed on May 6, 2015, is attached as

Exhibit 15 and incorporated herein by reference. A printed-to-pdf reproduction of Stillwater Glass' December 10, 2014 Facebook post (https://www.facebook.com/stillwater.glass/photos/a.632769046835145.1073741826.632768940168489/632769510168432/?type=1&theater), as it existed on May 6, 2015, is attached as Exhibit 16 and incorporated herein by reference. A printed-to-pdf reproduction of Stillwater Glass' December 23, 2014 Facebook post (https://www.facebook.com/stillwater.glass/videos/vb.632768940168489/633492683429448/?type=2&theater), as it existed on May 6, 2015, is attached as Exhibit 17 and incorporated herein by reference.

60.     On information and belief, Stillwater Glass' December 10, 2014 Facebook post (Exhibit 16), as of May 6, 2015, stated in part:

> Stillwater Glass
> I helped a friend install an Oxygen Frog process controller to run his oxygen system at the studio. Ribbet, Ribbet, Rage it!

61.     On information and belief, Stillwater Glass' December 23, 2014 Facebook post (Exhibit 17), as of May 6, 2015, stated in part:

> Stillwater Glass
> Green Flash is now operating on the OxygenFrog. Ribbet, Ribbet Rage it! — in Tallahassee, Florida.

### NOTICE TO OXYGEN FROG'S NATIONAL DISTRIBUTOR

62.     On or about March 31, 2015, counsel for Plaintiff HVLPO2, sent Ross L. Thackery ("Thackery"), President and Registered Agent of ABR, a cease and desist letter regarding "Intellectual Property of HVLPO2, LLC" by certified U.S. mail and electronic mail. A true and correct copy of the cease and desist letter, sent to ABR on or about March 31, 2015, is attached hereto as Exhibit 18, and is incorporated herein by reference. The cease and desist letter to ABR (Exhibit 18) informed ABR that certain

21

products (*e.g.*, "Oxygen Frog Oxygen Management System") sold and/or offered for sale on ABR's web page (*see*, *e.g.*, Exhibit 8) were infringing the '840 Patent and/or the '941 Patent.  The letter demanded that ABR cease and desist "from the manufacturing, offering for sale, and selling of the "Oxygen Frog Oxygen Management System" and any other infringing products".

### RESPONSE BY OXYGEN FROG'S NATIONAL DISTRIBUTOR

63.    On or about March 31, 2015, Thackery responded by email to the cease and desist letter sent to ABR.  A true and correct copy of the email from Thackery (with redactions) is attached hereto as Exhibit 19, and is incorporated herein by reference. The email (Exhibit 19) stated in part:

> "We have removed this product as directed.
>
> We feel sorry that someone has copied your products, we will remove ourselves from this matter.
>
> Thanks for your advanced notice."

### NOTICE TO DEFENDANTS

64.    On or about March 31, 2015, counsel for Plaintiff HVLPO2 sent Defendant Oxygen Frog and Defendant Fleischman, purported manager and Registered Agent of Defendant Oxygen Frog, a cease and desist letter regarding "Intellectual Property of HVLPO2, LLC" by certified U.S. mail to Defendant Oxygen Frog and Defendant Fleischman and by electronic mail to an email address ("stillwaterglass8@__[REDACTED]__", which has been redacted) associated with, owned by, and/or operated by Stillwater Glass.  A true and correct copy of the cease and desist letter sent to Defendants on or about March 31, 2015, is attached hereto as Exhibit 20, and is incorporated herein by reference.  The cease and desist letter to

Defendants (Exhibit 20) informed Defendants that Defendant Oxygen Frog's manufacture, demonstrations, offer for sale, and/or sales of certain products (*e.g.*, "Oxygen Frog Oxygen Management System")  were infringing the '840 Patent and/or the '941 Patent.  The letter to Defendants demanded that Defendant Oxygen Frog cease and desist "from the manufacturing, offering for sale, and selling of the "Oxygen Frog Oxygen Management System" and any other infringing products".

65.     On or about June 11, 2015, Defendants were served with a Complaint filed in United States District Court for the District of Nebraska.  The Complaint alleged, *inter alia*, infringement of the '840 Patent and the '941 Patent by the Defendants.  (*See HVLPO2, LLC, v. Oxygen Frog, LLC, et al.*, No. 8:15-cv-00176-JMG-CRZ, Filing Nos. 1, 12-14 (D. Neb. May 22, 2015 and June 16, 2015).)

66.     On March 28, 2016, Defendants' counsel was served with Plaintiff's Motion for Leave to File Amended Complaint, which included a proposed Amended Complaint that additionally alleged, *inter alia*, infringement of the '434 Patent by Defendant Oxygen Frog and Defendant Fleischman.  (*See HVLPO2, LLC, v. Oxygen Frog, LLC, et al.*, No. 8:15-cv-00176-JMG-CRZ, Filing No. 28 (D. Neb. Mar. 28, 2016).)

## RESPONSE BY DEFENDANTS

67.     On information and belief, on or about April 7, 2015, Defendant Fleischman and/or Defendant Oxygen Frog posted a "HIGH VOLUME OXYGEN LEGAL THREAT" web page on Defendant Oxygen Frog's web site.  A printed-to-pdf reproduction of Oxygen Frog's "HIGH VOLUME OXYGEN LEGAL THREAT" page (http://www.oxygenfrog.com/high-volume-oxygen-legal-threat.html), as it existed on April 7, 2015, is attached as Exhibit 21 and incorporated herein by reference.  A printed-

23

to-pdf reproduction of Oxygen Frog's "HIGH VOLUME OXYGEN LEGAL THREAT" page (http://www.oxygenfrog.com/high-volume-oxygen-legal-threat.html), as it existed on May 6, 2015, is attached as Exhibit 22 and incorporated herein by reference.  As of May 6, 2015, Oxygen Frog's "HIGH VOLUME OXYGEN LEGAL THREAT" page (*see*, *e.g.*, Exhibits 21-22) stated in part:

> A word about the legal threat from High Volume Oxygen.
>
> Recently, OxygenFrog LLC was threatened with legal action by HVLPO2 LLC (High Volume Oxygen).  They claim to be the original inventor of the concept of storing oxygen generated by oxygen concentrators in a storage tank and delivering that oxygen to a torch.  High Volume Oxygen holds several patents regarding this technology, and has demanded that OxygenFrog shut down all business operations related to oxygen.  High Volume's attorney also threatened our national distributor, and forced them to discontinue any association with OxygenFrog.
>
> A copy of the 'Cease and Desist' demand letter from High Volume Oxygen's attorney may be found HERE [(a hyperlink to a copy of the letter provided in Exhibit 20; the hyperlink has been omitted)].
>
> The concept of on-site, on-demand, oxygen generation has been around for decades, long before High Volume Oxygen filed its patents.  There are dozens of companies that offer both larger and smaller versions of the systems that High Volume Oxygen claims as their own original technology.
>
> We at OxygenFrog are confident that will prevail in the upcoming legal battle.  We will continue to operate our business at full capacity as we walk through this process.
>
> Nothing regarding this matter will affect our current or future customers.
>
> The OxygenFrog team remains committed to continue to provide the finest quality oxygen systems and components in the industry.
>
> Damn the torpedos.

Ribbet, Ribbet, Rage it!

Regards,

Scott Fleischman
OxygenFrog LLC

68.     On information and belief, on or about April 7, 2015, Defendant Fleischman and/or Defendant Oxygen Frog posted a statement (Exhibit 12) on Defendant Oxygen Frog's Facebook page in response to Plaintiff's cease and desist letter (Exhibit 20), which was sent to Defendants.  On information and belief, Defendant Oxygen Frog's Facebook page contains and/or contained various false and defamatory and/or disparaging statements about Plaintiff HVLPO2 and/or HVLPO2's property.

69.     On information and belief, on or about April 7, 2015, Defendant Fleischman and/or Defendant Oxygen Frog posted a news feed post under the "Tools and Equipment, New and Used" section of "For Sale Posts" on the Glassifieds. ("News Feed Post") A true and correct transcript of the News Feed Post and comments thereto is attached hereto as Exhibit 25 and incorporated by reference in its entirety.

70.     On information and belief, on or about May 4, 2015, Defendant Fleischman, Stillwater Glass, and/or Defendant Oxygen Frog responded by email to the cease and desist letter sent to Defendants.  On information and belief, the email was sent from an email address ("stillwaterglass8@_[REDACTED]__", which has been redacted) associated with, owned by, and/or operated by Stillwater Glass.

71.     On information and belief, Defendant Fleischman has made various false and defamatory and/or disparaging statements regarding Plaintiff HVLPO2 and HVLPO2's intellectual property, and the false and defamatory and/or disparaging statements were distributed, in a written medium, to third parties linked to his personal

Facebook account.  On information and belief, Defendant Fleischman made multiple statements on his personal Facebook page, apparently in response to Plaintiff's cease and desist letter (Exhibit 20), which was sent to Defendants.

72.    On information and belief, and apparently in response to Defendant Fleischman's false and defamatory statements toward Plaintiff HVLPO2 on Defendant Fleischman's personal Facebook page, multiple third-party Facebook users indicated that they would purchase Oxygen Frog Products; for example, one Facebook user stated, "I am def gonna buy frog now!", to which a different Facebook user stated, "Yeah, me too".

73.    Fleischman and Oxygen Frog made various defamatory and/or commercially disparaging statements toward HVLPO2, or HVLPO2's property, in the News Feed Post and comments thereto, on Facebook, and on the Oxygen Frog website.  The various defamatory and/or commercially disparaging statements include but are not limited to:

   a.  "The concept of on-site, on-demand, oxygen generation has been around for decades, long before High Volume Oxygen filed its Patents.  There are dozens of companies that offer both larger and smaller versions of the systems that High Volume Oxygen claims as their own original technology."  *See* Exhibits 12, 21, 22, and 25.

   b.   "They claim to be the original inventor of the concept of storing oxygen generated by oxygen concentrators in a storage tank and delivering that oxygen to a torch." *See* Exhibits 12, 21, 22, and 25.

    c. "High Volume Oxygen holds several patents regarding this technology, and has demanded that OxygenFrog shut down all business operations related to oxygen." *See* Exhibits 12, 21, 22, and 25.

    d. "High Volume's attorney also threatened our national distributor, and forced them to discontinue any association with OxygenFrog." *See* Exhibits 12, 21, 22, and 25.

    e. "Well said, Justin. When you write a patent, as I have done several times, you have to do prior art search, and disclose all related patents, related publications, and current practices. This serves to protect people like myself from frivolous lawsuits, it also protects the one filing the patent from thinking that they have a monopoly on a technology, that they really don't." *See* Exhibit 25.

(The above-listed statements shall hereinafter be referred to as "Statements".)

74. On information and belief, Defendant Fleischman's and/or Defendant Oxygen Frog's false and defamatory and/or disparaging statements on Defendant Oxygen Frog's website have driven potential customers to Defendant Oxygen Frog and have resulted in actual sales of infringing products by Defendant Oxygen Frog.

75. On information and belief, Plaintiff HVLPO2 has lost actual sales and customers and will continue to lose sales and customers as a result of Defendant Fleischman's and/or Defendant Oxygen Frog's false and defamatory and/or disparaging statements published on Defendant Oxygen Frog's website.

76. On information and belief, Plaintiff HVLPO2's reputation and goodwill have been damaged and will continue to be damaged as a result of Defendant Fleischman's

and/or Defendant Oxygen Frog's false and defamatory and/or disparaging statements published on Defendant Oxygen Frog's website.

77.     On information and belief, Defendant Fleischman's and/or Defendant Oxygen Frog's false and defamatory and/or disparaging statements on Defendant Oxygen Frog's Facebook page have driven potential customers to Defendant Oxygen Frog and have resulted in actual sales of infringing products by Defendant Oxygen Frog.

78.     On information and belief, Plaintiff HVLPO2 has lost actual sales and customers and will continue to lose sales and customers as a result of Defendant Fleischman's and/or Defendant Oxygen Frog's false and defamatory and/or disparaging statements published on Defendant Oxygen Frog's Facebook page.

79.     On information and belief, Plaintiff HVLPO2's reputation and goodwill have been damaged and will continue to be damaged as a result of Defendant Fleischman's and/or Defendant Oxygen Frog's false and defamatory and/or disparaging statements published on Defendant Oxygen Frog's Facebook page.

80.     On information and belief, Defendant Fleischman's false and defamatory and/or disparaging statements on Defendant Fleischman's Facebook page have driven potential customers to Defendant Oxygen Frog and have resulted in actual sales of infringing products by Defendant Oxygen Frog.

81.     On information and belief, Plaintiff HVLPO2 has lost actual sales and customers and will continue to lose sales and customers as a result of Defendant Fleischman's false and defamatory and/or disparaging statements published on Defendant Fleischman's Facebook page.

82.     On information and belief, Plaintiff HVLPO2's reputation and goodwill have been damaged and will continue to be damaged as a result of Defendant Fleischman's false and defamatory and/or disparaging statements published on Defendant Fleischman's Facebook page.

83.     On information and belief, Defendant Fleischman's and/or Defendant Oxygen Frog's false and defamatory and/or disparaging statements on the Glassifieds have driven potential customers to Defendant Oxygen Frog and have resulted in actual sales of infringing products by Defendant Oxygen Frog.

84.     On information and belief, Plaintiff HVLPO2 has lost actual sales and customers and will continue to lose sales and customers as a result of Defendant Fleischman's and/or Defendant Oxygen Frog's false and defamatory and/or disparaging statements published on the Glassifieds.

85.     On information and belief, Plaintiff HVLPO2's reputation and goodwill have been damaged and will continue to be damaged as a result of Defendant Fleischman's and/or Defendant Oxygen Frog's false and defamatory and/or disparaging statements published on the Glassifieds.

### DEFENDANTS' USE OF PLAINTIFF'S TRADEMARKS

86.     On information and belief, Defendant Fleischman and/or Defendant Oxygen Frog has represented to potential customers and/or actual customers of oxygen generating systems that Defendant Oxygen Frog manufactures and sells the "HV60" oxygen generating system.

87.     Hidden text contained within the source code of Defendant Oxygen Frog's pricing page of its website states in part: "HVO HV30 HV60 MIGHTY MITE ARE NOT

ASSOCIATED WITH OXYGENFROG LLC". A printed-to-pdf reproduction of the source code of Oxygen Frog's "Pricing" page (http://www.oxygenfrog.com/pricing.html), as it existed on March 23, 2016, is attached as Exhibit 24 and incorporated herein by reference.

88. On information and belief, Defendant Fleischman and/or Defendant Oxygen Frog has quoted prices for Defendant Oxygen Frog's oxygen generating systems under the name "HV60" to potential customers and/or actual customers of oxygen generating systems.

89. On information and belief, in or around March of 2016, Defendant Fleischman and/or Defendant Oxygen Frog has deceptively misrepresented to a potential customer from Ohio ("potential Ohio customer") that a particular oxygen generating system in a particular glass shop in California was manufactured by Defendant Oxygen Frog, when in fact the particular oxygen generating system was manufactured by Plaintiff under Plaintiff's trademark of "HV60".

90. On information and belief, when the potential Ohio customer wanted confirmation that the particular oxygen generating system in the particular California glass shop was manufactured by Defendant Oxygen Frog, Defendant Fleischman and/or Defendant Oxygen Frog again deceptively misrepresented to the potential Ohio customer that the particular oxygen generating system in the particular California glass shop was manufactured by Defendant Oxygen Frog, despite the particular oxygen generating system having actually been manufactured by Plaintiff under Plaintiff's trademark of "HV60".

91.     On information and belief, Defendant Fleischman and/or Defendant Oxygen Frog deceptively misrepresented to the potential Ohio customer a) the origin of the particular oxygen generating system in the particular California glass shop and b) the origin of oxygen generating systems sold by Plaintiff and Defendant Fleischman and/or Defendant Oxygen Frog.

92.     On information and belief, based on Defendant Fleischman's and/or Defendant Oxygen Frog's misrepresentations and use of "HV60", the potential Ohio customer was not only likely to be confused but was actually confused as to a) the origin of the particular oxygen generating system in the particular California glass shop and b) the origin of oxygen generating systems sold by Plaintiff versus the oxygen generating systems sold by Defendant Fleischman and/or Defendant Oxygen Frog.

93.     Based on Defendant Fleischman's and/or Defendant Oxygen Frog's deceptive misrepresentations to the potential Ohio customer, the potential Ohio customer contacted Plaintiff HVLPO2   believing that Defendant Oxygen Frog and Plaintiff were the same, co-sponsored, connected, associated, and/or affiliated.

94.     On information and belief, Defendant Fleischman's and/or Defendant Oxygen Frog's deceptive misrepresentations of the origin of oxygen generating systems and use of a mark, which is the same as or confusingly similar to Plaintiff's trademark of "HV60", on or in association with Defendant Oxygen Frog's products has driven potential customers to Defendant Oxygen Frog and has and/or is likely to result in actual sales of products by Defendant Oxygen Frog to the detriment of Plaintiff HVLPO2.

95.     On information and belief, Plaintiff HVLPO2 has lost, and is likely to lose, actual sales and customers and will, and is likely to, continue to lose sales and customers as a result of Defendant Fleischman's and/or Defendant Oxygen Frog's deceptive misrepresentations of the origin of oxygen generating systems and use of a mark, which is the same as or confusingly similar to Plaintiff's trademark of "HV60", on or in association with Defendant Oxygen Frog's products.

96.     On information and belief, Plaintiff HVLPO2's reputation and goodwill have been damaged and will continue to be damaged as a result of Defendant Fleischman's and/or Defendant Oxygen Frog's deceptive misrepresentations of the origin of oxygen generating systems and use of a mark, which is the same as or confusingly similar to Plaintiff's trademark of "HV60", on or in association with Defendant Oxygen Frog's products.

**COUNT I**

**DIRECT LITERAL INFRINGEMENT OF THE '840 PATENT
AGAINST DEFENDANT OXYGEN FROG**

97.     Plaintiff HVLPO2 re-alleges and incorporates by reference the allegations set forth in Paragraphs 1 through 96, above, as if fully set forth herein.

98.     On information and belief, Defendant Oxygen Frog owns, operates, controls, and demonstrates the use of Oxygen Frog Products, including the "OxygenFrog", and related systems.

99.     On information and belief, Defendant Oxygen Frog operates, controls, and/or demonstrates the use of expanded Oxygen Frog Products.  For example, on information and belief, Defendant Oxygen Frog's website stated, as of May 6, 2015, in

part: "The OxygenFrog expansion has three 115v, 15 amp circuits. An unlimited number of expansion boxes can be used with a single OxygenFrog."  (*See, e.g.*, Exhibit 4).

100.    On information and belief, Defendant Oxygen Frog's Oxygen Frog Products and/or expanded Oxygen Frog Products operate in the same manner as at least one of the method claims patented in the '840 Patent.

101.    Under 35 U.S.C. § 271(a), Defendant Oxygen Frog has infringed at least one claim of the '840 Patent.

102.    On information and belief, Defendant Oxygen Frog acted despite an objectively high likelihood that its actions constituted infringement of a valid patent.

103.    On information and belief, Defendant Oxygen Frog knew or it was so obvious that Defendant Oxygen Frog should have known of this objectively defined risk.

104.    On information and belief, Defendant Oxygen Frog willfully infringed the '840 Patent.

105.    On information and belief, one or more of the Defendants have benefitted from the infringement of the '840 Patent through:

> a.    lost sales by Plaintiff HVLPO2;
>
> b.    lost customers by Plaintiff HVLPO2;
>
> c.    lost profits by Plaintiff HVLPO2
>
> d.    lost sales made by Plaintiff HVLPO2
>
> e.    lost profits made by Plaintiff HVLPO2;
>
> f.    lost sales of unpatented items by Plaintiff HVLPO2;
>
> g.    lost sales of collateral unpatented items by Plaintiff HVLPO2;
>
> h.    future lost profits by Plaintiff HVLPO2;

i.     damage to Plaintiff HVLPO2's reputation and good will;

j.     continuing and future damage to Plaintiff HVLPO2's reputation and goodwill;

k.      gained sales by Defendant Oxygen Frog;

l.     gained customers by Defendant Oxygen Frog;

m.    gained profits by Defendant Oxygen Frog;

n.     gained sales of unpatented items by Defendant Oxygen Frog;

o.     gained sales of collateral unpatented items by Defendant Oxygen Frog;

p.     future gained profits by Defendant Oxygen Frog;

q.     improvement to one or more of the Defendants' reputation and good will;

r.     continuing and future improvement to one or more of the Defendants' reputation and goodwill; and

s.     increased value of one or more of the Defendants' business.

(The above-listed benefits shall hereinafter be referred to as "Benefits".)

106.    On information and belief, Plaintiff has sustained Injuries as a result of the infringement of the '840 Patent in the form of, including but not limited to:

a.    lost sales;

b.    lost customers;

c.    lost profits;

d.    sales made by Defendant Oxygen Frog;

e.    profits made by Defendant Oxygen Frog;

      f.     price erosion;

      g.    lost sales of unpatented items;

      h.    lost sales of collateral unpatented items;

      i.     future lost profits;

      j.     damage to Plaintiff HVLPO2's reputation and good will;

      k.    continuing and future damage to Plaintiff HVLPO2's reputation and goodwill; and

      l.     miscellaneous business losses in the form of increased value of Defendant Oxygen Frog's business, Stillwater Glass' business, and/or Defendant Fleischman's business.

(The items listed immediately above in subparts a through l shall hereinafter be referred to as "Injuries".)

107.   Plaintiff HVLPO2 has sustained Injuries by Defendant Oxygen Frog's infringing activities, and is entitled to recover money damages from Defendant Oxygen Frog adequate to compensate it for Defendant Oxygen Frog's infringement, but in no event less than a reasonable royalty together with interest and costs as fixed by the Court, and Plaintiff HVLPO2 will continue to suffer damages in the future that will not be mitigated unless Defendant Oxygen Frog's infringing activities are enjoined by this Court.

108.   Plaintiff HVLPO2 has sustained Injuries by Defendant Oxygen Frog's willful infringement and is entitled to recover treble damages from Defendant Oxygen Frog.

109.   The great and irreparable harm to Plaintiff HVLPO2 will only be mitigated if a temporary restraining order and/or preliminary injunction, as well as a permanent injunction, are issued enjoining Defendant Oxygen Frog and its respective agents, owners, officers, servants, employees, representatives, affiliates, and all others acting in active concert therewith from infringing the '840 Patent.

110.   Unless a temporary restraining order and/or preliminary injunction is ordered, Plaintiff will suffer irreparable harm.

111.   There is a substantial likelihood that Plaintiff will prevail on the merits of its claim for relief.

112.   The threatened injury to Plaintiff outweighs any threatened harm a temporary restraining order and/or injunction may cause the Defendants.

113.   Plaintiff has no adequate remedy at law or otherwise for the harm and damage being done.

114.   Such injunctive relief will serve the public interest.

**COUNT II**

**DIRECT INFRINGEMENT UNDER THE DOCTRINE OF EQUIVALENTS OF THE '840 PATENT AGAINST OXYGEN FROG**

115.   Plaintiff HVLPO2 re-alleges and incorporates by reference the allegations set forth in Paragraphs 1 through 114, above, as if fully set forth herein.

116.   On information and belief, Defendant Oxygen Frog owns, operates, controls, and demonstrates the use of Oxygen Frog Products, including the "OxygenFrog", and related systems.

117.   On information and belief, Defendant Oxygen Frog operates, controls, and/or demonstrates the use of expanded Oxygen Frog Products.  For example, on

information and belief, Defendant Oxygen Frog's website stated, as of May 6, 2015, in part: "The OxygenFrog expansion has three 115v, 15 amp circuits. An unlimited number of expansion boxes can be used with a single OxygenFrog." (*See, e.g.*, Exhibit 4)

118.   On information and belief, in addition to or in the alternative to Plaintiff's allegation of paragraph 100 that "Defendant Oxygen Frog's Oxygen Frog Products and/or expanded Oxygen Frog Products operate in the same manner as at least one of the method claims patented in the '840 Patent", Defendant Oxygen Frog's Oxygen Frog Products and/or expanded Oxygen Frog Products operate in the same manner as at least one of the method claims patented in the '840 Patent, except that any difference between an action of Defendant Oxygen Frog's Oxygen Frog Products and/or expanded Oxygen Frog Products and an action of any method claim of the '840 Patent are (a) insubstantial or (b) the action of the Defendant Oxygen Frog's Oxygen Frog Products and/or expanded Oxygen Frog Products and the action of any method claim of the '840 Patent (1) perform substantially the same function and (2) work in substantially the same way (3) to achieve substantially the same result as a requirement of any method claim of the '840 Patent.

119.   Under 35 U.S.C. § 271(a), Defendant Oxygen Frog has infringed at least one claim of the '840 Patent.

120.   On information and belief, Defendant Oxygen Frog acted despite an objectively high likelihood that its actions constituted infringement of a valid patent.

121.   On information and belief, Defendant Oxygen Frog knew or it was so obvious that Defendant Oxygen Frog should have known of this objectively defined risk.

122.    On information and belief, Defendant Oxygen Frog willfully infringed the '840 Patent.

123.    On information and belief, one or more of the Defendants have received Benefits from the infringement of the '840 Patent.

124.    Plaintiff has sustained Injuries as a result of the infringement of the '840 Patent.

125.    Plaintiff HVLPO2 has sustained Injuries by Defendant Oxygen Frog's infringing activities, and is entitled to recover money damages from Defendant Oxygen Frog adequate to compensate it for Defendant Oxygen Frog's infringement, but in no event less than a reasonable royalty together with interest and costs as fixed by the Court, and Plaintiff HVLPO2 will continue to suffer damages in the future that will not be mitigated unless Defendant Oxygen Frog's infringing activities are enjoined by this Court.

126.    Plaintiff HVLPO2 has sustained Injuries by Defendant Oxygen Frog's willful infringement and is entitled to recover treble damages from Defendant Oxygen Frog.

127.    The great and irreparable harm to Plaintiff HVLPO2 will only be mitigated if a temporary restraining order and/or preliminary injunction, as well as a permanent injunction, are issued enjoining Defendant Oxygen Frog and its respective agents, owners, officers, servants, employees, representatives, affiliates, and all others acting in active concert therewith from infringing the '840 Patent.

128.    Unless a temporary restraining order and/or preliminary injunction is ordered, Plaintiff will suffer irreparable harm.

129.   There is a substantial likelihood that Plaintiff will prevail on the merits of its claim for relief.

130.   The threatened injury to Plaintiff outweighs any threatened harm a temporary restraining order and/or injunction may cause the Defendants.

131.   Plaintiff has no adequate remedy at law or otherwise for the harm and damage being done.

132.   Such injunctive relief will serve the public interest.

## COUNT III

### INDIRECT CONTRIBUTORY INFRINGEMENT OF THE '840 PATENT AGAINST DEFENDANT OXYGEN FROG

133.   Plaintiff HVLPO2 re-alleges and incorporates by reference the allegations set forth in Paragraphs 1 through 132, above, as if fully set forth herein.

134.   On information and belief, someone other than Defendant Oxygen Frog has directly infringed the '840 Patent under 35 U.S.C. § 271(a).

135.   On information and belief, Defendant Oxygen Frog has sold, offered for sale, or imported within the United States an apparatus for use in the infringing process.

136.   On information and belief, the apparatus sold, offered for sale, or imported within the United States for use in the infringing process is not a staple article or commodity of commerce capable of substantial non-infringing use.

137.   On information and belief, the apparatus constitutes a material part of at least one method claim of the '840 Patent.

138.   On information and belief, Defendant Oxygen Frog knew that the component was especially made or adapted for use in an infringing method.

139.   Under 35 U.S.C. § 271(c), Defendant Oxygen Frog has infringed at least one claim of the '840 Patent.

140.   On information and belief, Defendant Oxygen Frog acted despite an objectively high likelihood that its actions constituted infringement of a valid patent.

141.   On information and belief, Defendant Oxygen Frog knew or it was so obvious that Defendant Oxygen Frog should have known of this objectively defined risk.

142.   On information and belief, Defendant Oxygen Frog willfully infringed the '840 Patent.

143.   On information and belief, one or more of the Defendants have received Benefits from the infringement of the '840 Patent.

144.   Plaintiff has sustained Injuries as a result of the infringement of the '840 Patent.

145.   Plaintiff HVLPO2 has sustained Injuries by Defendant Oxygen Frog's infringing activities, and is entitled to recover money damages from Defendant Oxygen Frog adequate to compensate it for Defendant Oxygen Frog's infringement, but in no event less than a reasonable royalty together with interest and costs as fixed by the Court, and Plaintiff HVLPO2 will continue to suffer damages in the future that will not be mitigated unless Defendant Oxygen Frog's infringing activities are enjoined by this Court.

146.   Plaintiff HVLPO2 has sustained Injuries by Defendant Oxygen Frog's willful infringement and is entitled to recover treble damages from Defendant Oxygen Frog.

147.    The great and irreparable harm to Plaintiff HVLPO2 will only be mitigated if a temporary restraining order and/or preliminary injunction, as well as a permanent injunction, are issued enjoining Defendant Oxygen Frog and its respective agents, owners, officers, servants, employees, representatives, affiliates, and all others acting in active concert therewith from infringing the '840 Patent.

148.    Unless a temporary restraining order and/or preliminary injunction is ordered, Plaintiff will suffer irreparable harm.

149.    There is a substantial likelihood that Plaintiff will prevail on the merits of its claim for relief.

150.    The threatened injury to Plaintiff outweighs any threatened harm a temporary restraining order and/or injunction may cause the Defendants.

151.    Plaintiff has no adequate remedy at law or otherwise for the harm and damage being done.

152.    Such injunctive relief will serve the public interest.

**COUNT IV**

**INDIRECT INDUCEMENT OF INFRINGEMENT OF '840 PATENT
AGAINST DEFENDANT OXYGEN FROG**

153.    Plaintiff HVLPO2 re-alleges and incorporates by reference the allegations set forth in Paragraphs 1 through 152, above, as if fully set forth herein.

154.    On information and belief, Defendant Oxygen Frog aided, instructed, or otherwise acted with the intent to cause acts by direct infringers that would constitute direct infringement, either literally or under the doctrine of equivalents, of the '840 Patent under 35 U.S.C. § 271(a).

155.   On information and belief, Defendant Oxygen Frog knew of the '840 Patent, or showed willful blindness to the existence of the '840 Patent, at that time.

156.   On information and belief, Defendant Oxygen Frog knew, or should have known, that its actions would result in infringement of at least one claim of the '840 Patent.

157.   On information and belief, direct infringers have infringed at least one patented method claim of the '840 Patent.

158.   Under 35 U.S.C. § 271(b), Defendant Oxygen Frog has infringed at least one claim of the '840 Patent.

159.   On information and belief, Defendant Oxygen Frog acted despite an objectively high likelihood that its actions constituted infringement of a valid patent.

160.   On information and belief, Defendant Oxygen Frog knew or it was so obvious that Defendant Oxygen Frog should have known of this objectively defined risk.

161.   On information and belief, Defendant Oxygen Frog willfully infringed the '840 Patent.

162.   On information and belief, one or more of the Defendants have received Benefits from the infringement of the '840 Patent.

163.   Plaintiff has sustained Injuries as a result of the infringement of the '840 Patent.

164.   Plaintiff HVLPO2 has sustained Injuries by Defendant Oxygen Frog's infringing activities, and is entitled to recover money damages from Defendant Oxygen Frog adequate to compensate it for Defendant Oxygen Frog's infringement, but in no event less than a reasonable royalty together with interest and costs as fixed by the

Court, and Plaintiff HVLPO2 will continue to suffer damages in the future that will not be mitigated unless Defendant Oxygen Frog's infringing activities are enjoined by this Court.

165.    Plaintiff HVLPO2 has sustained Injuries by Defendant Oxygen Frog's willful infringement and is entitled to recover treble damages from Defendant Oxygen Frog.

166.    The great and irreparable harm to Plaintiff HVLPO2 will only be mitigated if a temporary restraining order and/or preliminary injunction, as well as a permanent injunction, are issued enjoining Defendant Oxygen Frog and its respective agents, owners, officers, servants, employees, representatives, affiliates, and all others acting in active concert therewith from infringing the '840 Patent.

167.    Unless a temporary restraining order and/or preliminary injunction is ordered, Plaintiff will suffer irreparable harm.

168.    There is a substantial likelihood that Plaintiff will prevail on the merits of its claim for relief.

169.    The threatened injury to Plaintiff outweighs any threatened harm a temporary restraining order and/or injunction may cause the Defendants.

170.    Plaintiff has no adequate remedy at law or otherwise for the harm and damage being done.

171.    Such injunctive relief will serve the public interest.

## COUNT V

### DIRECT LITERAL INFRINGEMENT OF '941 PATENT
### AGAINST DEFENDANT OXYGEN FROG

172.   Plaintiff HVLPO2 re-alleges and incorporates by reference the allegations set forth in Paragraphs 1 through 171, above, as if fully set forth herein.

173.   On information and belief, Defendant Oxygen Frog owns, operates, controls, and demonstrates the use of Oxygen Frog Products, including the "OxygenFrog", and related systems.

174.   On information and belief, Defendant Oxygen Frog's Oxygen Frog Products operate in the same manner as at least one of the method claims patented in the '941 Patent.

175.   Under 35 U.S.C. § 271(a), Defendant Oxygen Frog has infringed at least one claim of the '941 Patent.

176.   On information and belief, Defendant Oxygen Frog acted despite an objectively high likelihood that its actions constituted infringement of a valid patent.

177.   On information and belief, Defendant Oxygen Frog knew or it was so obvious that Defendant Oxygen Frog should have known of this objectively defined risk.

178.   On information and belief, Defendant Oxygen Frog willfully infringed the '941 Patent.

179.   On information and belief, one or more of the Defendants have received Benefits from the infringement of the '941 Patent.

180.   Plaintiff has sustained Injuries as a result of the infringement of the '941 Patent.

181.   Plaintiff HVLPO2 has sustained Injuries by Defendant Oxygen Frog's infringing activities, and is entitled to recover money damages from Defendant Oxygen Frog adequate to compensate it for Defendant Oxygen Frog's infringement, but in no event less than a reasonable royalty together with interest and costs as fixed by the Court, and Plaintiff HVLPO2 will continue to suffer damages in the future that will not be mitigated unless Defendant Oxygen Frog's infringing activities are enjoined by this Court.

182.   Plaintiff HVLPO2 has sustained Injuries by Defendant Oxygen Frog's willful infringement and is entitled to recover treble damages from Defendant Oxygen Frog.

183.   The great and irreparable harm to Plaintiff HVLPO2 will only be mitigated if a temporary restraining order and/or preliminary injunction, as well as a permanent injunction, are issued enjoining Defendant Oxygen Frog and its respective agents, owners, officers, servants, employees, representatives, affiliates, and all others acting in active concert therewith from infringing the '941 Patent.

184.   Unless a temporary restraining order and/or preliminary injunction is ordered, Plaintiff will suffer irreparable harm.

185.   There is a substantial likelihood that Plaintiff will prevail on the merits of its claim for relief.

186.   The threatened injury to Plaintiff outweighs any threatened harm a temporary restraining order and/or injunction may cause the Defendants.

187.   Plaintiff has no adequate remedy at law or otherwise for the harm and damage being done.

188.    Such injunctive relief will serve the public interest.

**COUNT VI**

**DIRECT INFRINGEMENT UNDER THE DOCTRINE OF EQUIVALENTS OF
THE '941 PATENT AGAINST DEFENDANT OXYGEN FROG**

189.    Plaintiff HVLPO2 re-alleges and incorporates by reference the allegations set forth in Paragraphs 1 through 188, above, as if fully set forth herein.

190.    On information and belief, Defendant Oxygen Frog owns, operates, controls, and demonstrates the use of Oxygen Frog Products, including the "OxygenFrog", and related systems.

191.    On information and belief, in addition to or in the alternative to Plaintiff's allegation of paragraph 174 that "Defendant Oxygen Frog's Oxygen Frog Products operate in the same manner as at least one of the method claims patented in the '941 Patent", Defendant Oxygen Frog's Oxygen Frog Products operate in the same manner as at least one of the method claims patented in the '941 Patent, except that any difference between an action of Defendant Oxygen Frog's Oxygen Frog Products and an action of any method claim of the '941 Patent are (a) insubstantial or (b) the action of the Defendant Oxygen Frog's Oxygen Frog Products and the action of any method claim of the '941 Patent (1) perform substantially the same function and (2) work in substantially the same way (3) to achieve substantially the same result as a requirement of any method claim of the '941 Patent.

192.    Under 35 U.S.C. § 271(a), Defendant Oxygen Frog has infringed at least one claim of the '941 Patent.

193.    On information and belief, Defendant Oxygen Frog acted despite an objectively high likelihood that its actions constituted infringement of a valid patent.

46

194.    On information and belief, Defendant Oxygen Frog knew or it was so obvious that Defendant Oxygen Frog should have known of this objectively defined risk.

195.    On information and belief, Defendant Oxygen Frog willfully infringed the '941 Patent.

196.    On information and belief, one or more of the Defendants have received Benefits from the infringement of the '941 Patent.

197.    Plaintiff has sustained Injuries as a result of the infringement of the '941 Patent.

198.    Plaintiff HVLPO2 has sustained Injuries by Defendant Oxygen Frog's infringing activities, and is entitled to recover money damages from Defendant Oxygen Frog adequate to compensate it for Defendant Oxygen Frog's infringement, but in no event less than a reasonable royalty together with interest and costs as fixed by the Court, and Plaintiff HVLPO2 will continue to suffer damages in the future that will not be mitigated unless Defendant Oxygen Frog's infringing activities are enjoined by this Court.

199.    Plaintiff HVLPO2 has sustained Injuries by Defendant Oxygen Frog's willful infringement and is entitled to recover treble damages from Defendant Oxygen Frog.

200.    The great and irreparable harm to Plaintiff HVLPO2 will only be mitigated if a temporary restraining order and/or preliminary injunction, as well as a permanent injunction, are issued enjoining Defendant Oxygen Frog and its respective agents, owners, officers, servants, employees, representatives, affiliates, and all others acting in active concert therewith from infringing the '941 Patent.

201.    Unless a temporary restraining order and/or preliminary injunction is ordered, Plaintiff will suffer irreparable harm.

202.    There is a substantial likelihood that Plaintiff will prevail on the merits of its claim for relief.

203.    The threatened injury to Plaintiff outweighs any threatened harm a temporary restraining order and/or injunction may cause the Defendants.

204.    Plaintiff has no adequate remedy at law or otherwise for the harm and damage being done.

205.    Such injunctive relief will serve the public interest.

**COUNT VII**

**INDIRECT CONTRIBUTORY INFRINGEMENT OF
THE '941 PATENT AGAINST DEFENDANT OXYGEN FROG**

206.    Plaintiff HVLPO2 re-alleges and incorporates by reference the allegations set forth in Paragraphs 1 through 205, above, as if fully set forth herein.

207.    On information and belief, someone other than Defendant Oxygen Frog has directly infringed the '941 Patent under 35 U.S.C. § 271(a).

208.    On information and belief, Defendant Oxygen Frog has sold, offered for sale, or imported within the United States an apparatus for use in the infringing process.

209.    On information and belief, the apparatus sold, offered for sale, or imported within the United States for use in the infringing process is not a staple article or commodity of commerce capable of substantial non-infringing use.

210.    On information and belief, the apparatus constitutes a material part of at least one method claim of the '941 Patent.

48

211.   On information and belief, Defendant Oxygen Frog knew that the component was especially made or adapted for use in an infringing method.

212.   Under 35 U.S.C. § 271(c), Defendant Oxygen Frog has infringed at least one claim of the '941 Patent.

213.   On information and belief, Defendant Oxygen Frog acted despite an objectively high likelihood that its actions constituted infringement of a valid patent.

214.   On information and belief, Defendant Oxygen Frog knew or it was so obvious that Defendant Oxygen Frog should have known of this objectively defined risk.

215.   On information and belief, Defendant Oxygen Frog willfully infringed the '941 Patent.

216.   On information and belief, one or more of the Defendants have received Benefits from the infringement of the '941 Patent.

217.   Plaintiff has sustained Injuries as a result of the infringement of the '941 Patent.

218.   Plaintiff HVLPO2 has sustained Injuries by Defendant Oxygen Frog's infringing activities, and is entitled to recover money damages from Defendant Oxygen Frog adequate to compensate it for Defendant Oxygen Frog's infringement, but in no event less than a reasonable royalty together with interest and costs as fixed by the Court, and Plaintiff HVLPO2 will continue to suffer damages in the future that will not be mitigated unless Defendant Oxygen Frog's infringing activities are enjoined by this Court.

219.    Plaintiff HVLPO2 has sustained Injuries by Defendant Oxygen Frog's willful infringement and is entitled to recover treble damages from Defendant Oxygen Frog.

220.    The great and irreparable harm to Plaintiff HVLPO2 will only be mitigated if a temporary restraining order and/or preliminary injunction, as well as a permanent injunction, are issued enjoining Defendant Oxygen Frog and its respective agents, owners, officers, servants, employees, representatives, affiliates, and all others acting in active concert therewith from infringing the '941 Patent.

221.    Unless a temporary restraining order and/or preliminary injunction is ordered, Plaintiff will suffer irreparable harm.

222.    There is a substantial likelihood that Plaintiff will prevail on the merits of its claim for relief.

223.    The threatened injury to Plaintiff outweighs any threatened harm a temporary restraining order and/or injunction may cause the Defendants.

224.    Plaintiff has no adequate remedy at law or otherwise for the harm and damage being done.

225.    Such injunctive relief will serve the public interest.

## COUNT VIII

### INDIRECT INDUCEMENT OF INFRINGEMENT OF
### THE '941 PATENT AGAINST DEFENDANT OXYGEN FROG

226.    Plaintiff HVLPO2 re-alleges and incorporates by reference the allegations set forth in Paragraphs 1 through 225, above, as if fully set forth herein.

227.    On information and belief, Defendant Oxygen Frog aided, instructed, or otherwise acted with the intent to cause acts by direct infringers that would constitute

direct infringement, either literally or under the doctrine of equivalents, of the '941 Patent under 35 U.S.C. § 271(a).

228.   On information and belief, Defendant Oxygen Frog knew of the '941 Patent, or showed willful blindness to the existence of the '941 Patent, at that time.

229.   On information and belief, Defendant Oxygen Frog knew, or should have known, that its actions would result in infringement of at least one claim of the '941 Patent.

230.   On information and belief, direct infringers have infringed at least one patented method claim of the '941 Patent.

231.   Under 35 U.S.C. § 271(b), Defendant Oxygen Frog has infringed at least one claim of the '941 Patent.

232.   On information and belief, Defendant Oxygen Frog acted despite an objectively high likelihood that its actions constituted infringement of a valid patent.

233.   On information and belief, Defendant Oxygen Frog knew or it was so obvious that Defendant Oxygen Frog should have known of this objectively defined risk.

234.   On information and belief, Defendant Oxygen Frog willfully infringed the '941 Patent.

235.   On information and belief, one or more of the Defendants have received Benefits from the infringement of the '941 Patent.

236.   Plaintiff has sustained Injuries as a result of the infringement of the '941 Patent.

237.   Plaintiff HVLPO2 has sustained Injuries by Defendant Oxygen Frog's infringing activities, and is entitled to recover money damages from Defendant Oxygen

Frog adequate to compensate it for Defendant Oxygen Frog's infringement, but in no event less than a reasonable royalty together with interest and costs as fixed by the Court, and Plaintiff HVLPO2 will continue to suffer damages in the future that will not be mitigated unless Defendant Oxygen Frog's infringing activities are enjoined by this Court.

238.   Plaintiff HVLPO2 has sustained Injuries by Defendant Oxygen Frog's willful infringement and is entitled to recover treble damages from Defendant Oxygen Frog.

239.   The great and irreparable harm to Plaintiff HVLPO2 will only be mitigated if a temporary restraining order and/or preliminary injunction, as well as a permanent injunction, are issued enjoining Defendant Oxygen Frog and its respective agents, owners, officers, servants, employees, representatives, affiliates, and all others acting in active concert therewith from infringing the '941 Patent.

240.   Unless a temporary restraining order and/or preliminary injunction is ordered, Plaintiff will suffer irreparable harm.

241.   There is a substantial likelihood that Plaintiff will prevail on the merits of its claim for relief.

242.   The threatened injury to Plaintiff outweighs any threatened harm a temporary restraining order and/or injunction may cause the Defendants.

243.   Plaintiff has no adequate remedy at law or otherwise for the harm and damage being done.

244.   Such injunctive relief will serve the public interest.

**COUNT IX**

**DIRECT LITERAL INFRINGEMENT OF THE '434 PATENT
AGAINST DEFENDANT OXYGEN FROG**

245.   Plaintiff HVLPO2 re-alleges and incorporates by reference the allegations set forth in Paragraphs 1 through 244, above, as if fully set forth herein.

246.   On information and belief, Defendant Oxygen Frog has made, sold, offered for sale, and used Oxygen Frog Products, including the "OxygenFrog", and related systems.

247.   On information and belief, Defendant Oxygen Frog has made, sold, offered for sale, and used expanded Oxygen Frog Products.   For example, on information and belief, Defendant Oxygen Frog's website stated, as of May 6, 2015, in part: "The OxygenFrog expansion has three 115v, 15 amp circuits. An unlimited number of expansion boxes can be used with a single OxygenFrog."   (*See, e.g.*, Exhibit 4). Additionally, on information and belief, Oxygen Frog's website continued to offer for sale an "OxygenFrog Expansion Controller" on May 27, 2016.

248.   On information and belief, Defendant Oxygen Frog's Oxygen Frog Products and/or expanded Oxygen Frog Products meet all the requirements of at least one of the apparatus claims patented in the '434 Patent.

249.   Under 35 U.S.C. § 271(a), Defendant Oxygen Frog has infringed at least one claim of the '434 Patent.

250.   On information and belief, Defendant Oxygen Frog acted despite an objectively high likelihood that its actions constituted infringement of a valid patent.

251.   On information and belief, Defendant Oxygen Frog knew or it was so obvious that Defendant Oxygen Frog should have known of this objectively defined risk.

252.   On information and belief, Defendant Oxygen Frog willfully infringed the '434 Patent.

253.   On information and belief, one or more of the Defendants have received Benefits from the infringement of the '434 Patent.

254.   Plaintiff has sustained Injuries as a result of the infringement of the '434 Patent.

255.   Plaintiff HVLPO2 has sustained Injuries by Defendant Oxygen Frog's infringing activities, and is entitled to recover money damages from Defendant Oxygen Frog adequate to compensate it for Defendant Oxygen Frog's infringement, but in no event less than a reasonable royalty together with interest and costs as fixed by the Court, and Plaintiff HVLPO2 will continue to suffer damages in the future that will not be mitigated unless Defendant Oxygen Frog's infringing activities are enjoined by this Court.

256.   Plaintiff HVLPO2 has sustained Injuries by Defendant Oxygen Frog's willful infringement and is entitled to recover treble damages from Defendant Oxygen Frog.

257.   The great and irreparable harm to Plaintiff HVLPO2 will only be mitigated if a temporary restraining order and/or preliminary injunction, as well as a permanent injunction, are issued enjoining Defendant Oxygen Frog and its respective agents, owners, officers, servants, employees, representatives, affiliates, and all others acting in active concert therewith from infringing the '434 Patent.

258.   Unless a temporary restraining order and/or preliminary injunction is ordered, Plaintiff will suffer irreparable harm.

259.     There is a substantial likelihood that Plaintiff will prevail on the merits of its claim for relief.

260.     The threatened injury to Plaintiff outweighs any threatened harm a temporary restraining order and/or injunction may cause the Defendants.

261.     Plaintiff has no adequate remedy at law or otherwise for the harm and damage being done.

262.     Such injunctive relief will serve the public interest.

**COUNT X**

**DIRECT INFRINGEMENT UNDER THE DOCTRINE OF EQUIVALENTS OF THE '434 PATENT AGAINST OXYGEN FROG**

263.     Plaintiff HVLPO2 re-alleges and incorporates by reference the allegations set forth in Paragraphs 1 through 262, above, as if fully set forth herein.

264.     On information and belief, Defendant Oxygen Frog has made, sold, offered for sale, and used Oxygen Frog Products, including the "OxygenFrog", and related systems.

265.     On information and belief, Defendant Oxygen Frog has made, sold, offered for sale, and used expanded Oxygen Frog Products.   For example, on information and belief, Defendant Oxygen Frog's website stated, as of May 6, 2015, in part: "The OxygenFrog expansion has three 115v, 15 amp circuits. An unlimited number of expansion boxes can be used with a single OxygenFrog." (*See, e.g.*, Exhibit 4) Additionally, on information and belief, Oxygen Frog's website continued to offer for sale an "OxygenFrog Expansion Controller" on May 27, 2016.

266.     On information and belief, in addition to or in the alternative to Plaintiff's allegation of paragraph 248 that "Defendant Oxygen Frog's Oxygen Frog Products

and/or expanded Oxygen Frog Products meet all the requirements of at least one of the apparatus claims patented in the '434 Patent", Defendant Oxygen Frog's Oxygen Frog Products and/or expanded Oxygen Frog Products meet all the requirements of at least one of the apparatus claims patented in the '434 Patent, except that any difference between a structure of Defendant Oxygen Frog's Oxygen Frog Products and/or expanded Oxygen Frog Products and a structure of any apparatus claim of the '434 Patent are (a) insubstantial or (b) the structure of the Defendant Oxygen Frog's Oxygen Frog Products and/or expanded Oxygen Frog Products and the structure of any apparatus claim of the '434 Patent (1) perform substantially the same function and (2) work in substantially the same way (3) to achieve substantially the same result as a requirement of any apparatus claim of the '434 Patent.

267.   Under 35 U.S.C. § 271(a), Defendant Oxygen Frog has infringed at least one claim of the '434 Patent.

268.   On information and belief, Defendant Oxygen Frog acted despite an objectively high likelihood that its actions constituted infringement of a valid patent.

269.   On information and belief, Defendant Oxygen Frog knew or it was so obvious that Defendant Oxygen Frog should have known of this objectively defined risk.

270.   On information and belief, Defendant Oxygen Frog willfully infringed the '434 Patent.

271.   On information and belief, one or more of the Defendants have received Benefits from the infringement of the '434 Patent.

272.   Plaintiff has sustained Injuries as a result of the infringement of the '434 Patent.

56

273.   Plaintiff HVLPO2 has sustained Injuries by Defendant Oxygen Frog's infringing activities, and is entitled to recover money damages from Defendant Oxygen Frog adequate to compensate it for Defendant Oxygen Frog's infringement, but in no event less than a reasonable royalty together with interest and costs as fixed by the Court, and Plaintiff HVLPO2 will continue to suffer damages in the future that will not be mitigated unless Defendant Oxygen Frog's infringing activities are enjoined by this Court.

274.   Plaintiff HVLPO2 has sustained Injuries by Defendant Oxygen Frog's willful infringement and is entitled to recover treble damages from Defendant Oxygen Frog.

275.   The great and irreparable harm to Plaintiff HVLPO2 will only be mitigated if a temporary restraining order and/or preliminary injunction, as well as a permanent injunction, are issued enjoining Defendant Oxygen Frog and its respective agents, owners, officers, servants, employees, representatives, affiliates, and all others acting in active concert therewith from infringing the '434 Patent.

276.   Unless a temporary restraining order and/or preliminary injunction is ordered, Plaintiff will suffer irreparable harm.

277.   There is a substantial likelihood that Plaintiff will prevail on the merits of its claim for relief.

278.   The threatened injury to Plaintiff outweighs any threatened harm a temporary restraining order and/or injunction may cause the Defendants.

279.   Plaintiff has no adequate remedy at law or otherwise for the harm and damage being done.

280.    Such injunctive relief will serve the public interest.

## COUNT XI

### INDIRECT CONTRIBUTORY INFRINGEMENT OF
### '434 PATENT AGAINST DEFENDANT OXYGEN FROG

281.    Plaintiff HVLPO2 re-alleges and incorporates by reference the allegations set forth in Paragraphs 1 through 280, above, as if fully set forth herein.

282.    On information and belief, someone other than Defendant Oxygen Frog has directly infringed the '434 Patent under 35 U.S.C. § 271(a).

283.    On information and belief, Defendant Oxygen Frog has sold, offered for sale, or imported within the United States an apparatus for use in an infringing product or process.

284.    On information and belief, the apparatus sold, offered for sale, or imported within the United States for use in the infringing product or process is not a staple article or commodity of commerce capable of substantial non-infringing use.

285.    On information and belief, the apparatus constitutes a material part of at least one apparatus claim of the '434 Patent.

286.    On information and belief, Defendant Oxygen Frog knew that the component was especially made or adapted for use in an infringing product or process.

287.    Under 35 U.S.C. § 271(c), Defendant Oxygen Frog has infringed at least one claim of the '434 Patent.

288.    On information and belief, Defendant Oxygen Frog acted despite an objectively high likelihood that its actions constituted infringement of a valid patent.

289.    On information and belief, Defendant Oxygen Frog knew or it was so obvious that Defendant Oxygen Frog should have known of this objectively defined risk.

290.   On information and belief, Defendant Oxygen Frog willfully infringed the '434 Patent.

291.   On information and belief, one or more of the Defendants have received Benefits from the infringement of the '434 Patent.

292.   Plaintiff has sustained Injuries as a result of the infringement of the '434 Patent.

293.   Plaintiff HVLPO2 has sustained Injuries by Defendant Oxygen Frog's infringing activities, and is entitled to recover money damages from Defendant Oxygen Frog adequate to compensate it for Defendant Oxygen Frog's infringement, but in no event less than a reasonable royalty together with interest and costs as fixed by the Court, and Plaintiff HVLPO2 will continue to suffer damages in the future that will not be mitigated unless Defendant Oxygen Frog's infringing activities are enjoined by this Court.

294.   Plaintiff HVLPO2 has sustained Injuries by Defendant Oxygen Frog's willful infringement and is entitled to recover treble damages from Defendant Oxygen Frog.

295.   The great and irreparable harm to Plaintiff HVLPO2 will only be mitigated if a temporary restraining order and/or preliminary injunction, as well as a permanent injunction, are issued enjoining Defendant Oxygen Frog and its respective agents, owners, officers, servants, employees, representatives, affiliates, and all others acting in active concert therewith from infringing the '434 Patent.

296.   Unless a temporary restraining order and/or preliminary injunction is ordered, Plaintiff will suffer irreparable harm.

297.   There is a substantial likelihood that Plaintiff will prevail on the merits of its claim for relief.

298.   The threatened injury to Plaintiff outweighs any threatened harm a temporary restraining order and/or injunction may cause the Defendants.

299.   Plaintiff has no adequate remedy at law or otherwise for the harm and damage being done.

300.   Such injunctive relief will serve the public interest.

**COUNT XII**

**INDIRECT INDUCEMENT OF INFRINGEMENT OF '434 PATENT AGAINST DEFENDANT OXYGEN FROG**

301.   Plaintiff HVLPO2 re-alleges and incorporates by reference the allegations set forth in Paragraphs 1 through 300, above, as if fully set forth herein.

302.   On information and belief, Defendant Oxygen Frog aided, instructed, or otherwise acted with the intent to cause acts by direct infringers that would constitute direct infringement, either literally or under the doctrine of equivalents, of the '434 Patent under 35 U.S.C. § 271(a).

303.   On information and belief, Defendant Oxygen Frog knew of the '434 Patent, or showed willful blindness to the existence of the '434 Patent, at that time.

304.   On information and belief, Defendant Oxygen Frog knew, or should have known, that its actions would result in infringement of at least one claim of the '434 Patent.

305.   On information and belief, direct infringers have infringed at least one patented apparatus claim of the '434 Patent.

306.   Under 35 U.S.C. § 271(b), Defendant Oxygen Frog has infringed at least one claim of the '434 Patent.

307.   On information and belief, Defendant Oxygen Frog acted despite an objectively high likelihood that its actions constituted infringement of a valid patent.

308.   On information and belief, Defendant Oxygen Frog knew or it was so obvious that Defendant Oxygen Frog should have known of this objectively defined risk.

309.   On information and belief, Defendant Oxygen Frog willfully infringed the '434 Patent.

310.   On information and belief, one or more of the Defendants have received Benefits from the infringement of the '434 Patent.

311.   Plaintiff has sustained Injuries as a result of the infringement of the '434 Patent.

312.   Plaintiff HVLPO2 has sustained Injuries by Defendant Oxygen Frog's infringing activities, and is entitled to recover money damages from Defendant Oxygen Frog adequate to compensate it for Defendant Oxygen Frog's infringement, but in no event less than a reasonable royalty together with interest and costs as fixed by the Court, and Plaintiff HVLPO2 will continue to suffer damages in the future that will not be mitigated unless Defendant Oxygen Frog's infringing activities are enjoined by this Court.

313.   Plaintiff HVLPO2 has sustained Injuries by Defendant Oxygen Frog's willful infringement and is entitled to recover treble damages from Defendant Oxygen Frog.

314. The great and irreparable harm to Plaintiff HVLPO2 will only be mitigated if a temporary restraining order and/or preliminary injunction, as well as a permanent injunction, are issued enjoining Defendant Oxygen Frog and its respective agents, owners, officers, servants, employees, representatives, affiliates, and all others acting in active concert therewith from infringing the '434 Patent.

315. Unless a temporary restraining order and/or preliminary injunction is ordered, Plaintiff will suffer irreparable harm.

316. There is a substantial likelihood that Plaintiff will prevail on the merits of its claim for relief.

317. The threatened injury to Plaintiff outweighs any threatened harm a temporary restraining order and/or injunction may cause the Defendants.

318. Plaintiff has no adequate remedy at law or otherwise for the harm and damage being done.

319. Such injunctive relief will serve the public interest.

## COUNT XIII

### DIRECT LITERAL INFRINGEMENT OF THE '840 PATENT
### AGAINST DEFENDANT FLEISCHMAN

320. Plaintiff HVLPO2 re-alleges and incorporates by reference the allegations set forth in Paragraphs 1 through 319, above, as if fully set forth herein.

321. On information and belief, Defendant Fleischman owns, operates, controls, and demonstrates the use of Oxygen Frog Products, including the "OxygenFrog", and related systems.

322. On information and belief, Defendant Fleischman operates, controls, and/or demonstrates the use of expanded Oxygen Frog Products.

323.   On information and belief, Defendant Fleischman's Oxygen Frog Products and/or expanded Oxygen Frog Products operate in the same manner as at least one of the method claims patented in the '840 Patent.

324.   Under 35 U.S.C. § 271(a), Defendant Fleischman has infringed at least one claim of the '840 Patent.

325.   On information and belief, Defendant Fleischman acted despite an objectively high likelihood that its actions constituted infringement of a valid patent.

326.   On information and belief, Defendant Fleischman knew or it was so obvious that Defendant Fleischman should have known of this objectively defined risk.

327.   On information and belief, Defendant Fleischman willfully infringed the '840 Patent.

328.   On information and belief, one or more of the Defendants have received Benefits from the infringement of the '840 Patent.

329.   Plaintiff has sustained Injuries as a result of the infringement of the '840 Patent.

330.   Plaintiff HVLPO2 has sustained Injuries by Defendant Fleischman's infringing activities, and is entitled to recover money damages from Defendant Fleischman adequate to compensate it for Defendant Fleischman's infringement, but in no event less than a reasonable royalty together with interest and costs as fixed by the Court, and Plaintiff HVLPO2 will continue to suffer damages in the future that will not be mitigated unless Defendant Fleischman's infringing activities are enjoined by this Court.

331.   Plaintiff HVLPO2 has sustained Injuries by Defendant Fleischman's willful infringement and is entitled to recover treble damages from Defendant Fleischman.

332.   The great and irreparable harm to Plaintiff HVLPO2 will only be mitigated if a temporary restraining order and/or preliminary injunction, as well as a permanent injunction, are issued enjoining Defendant Fleischman and his respective servants, employees, representatives, affiliates, and all others acting in active concert therewith from infringing the '840 Patent.

333.   Unless a temporary restraining order and/or preliminary injunction is ordered, Plaintiff will suffer irreparable harm.

334.   There is a substantial likelihood that Plaintiff will prevail on the merits of its claim for relief.

335.   The threatened injury to Plaintiff outweighs any threatened harm a temporary restraining order and/or injunction may cause the Defendants.

336.   Plaintiff has no adequate remedy at law or otherwise for the harm and damage being done.

337.   Such injunctive relief will serve the public interest.

## COUNT XIV

### DIRECT INFRINGEMENT UNDER THE DOCTRINE OF EQUIVALENTS OF THE '840 PATENT AGAINST DEFENDANT FLEISCHMAN

338.   Plaintiff HVLPO2 re-alleges and incorporates by reference the allegations set forth in Paragraphs 1 through 337, above, as if fully set forth herein.

339.   On information and belief, Defendant Fleischman owns, operates, controls, and demonstrates the use of Oxygen Frog Products, including the "OxygenFrog", and related systems.

340.   On information and belief, Defendant Fleischman operates, controls, and/or demonstrates the use of expanded Oxygen Frog Products.

341.   On information and belief, in addition to or in the alternative to Plaintiff's allegation of paragraph 323 that "Defendant Fleischman's Oxygen Frog Products and/or expanded Oxygen Frog Products operate in the same manner as at least one of the method claims patented in the '840 Patent", Defendant Fleischman's Oxygen Frog Products and/or expanded Oxygen Frog Products operate in the same manner as at least one of the method claims patented in the '840 Patent, except that any difference between an action of Defendant Fleischman's Oxygen Frog Products and/or expanded Oxygen Frog Products and an action of any method claim of the '840 Patent are (a) insubstantial or (b) the action of the Defendant Fleischman's Oxygen Frog Products and/or expanded Oxygen Frog Products and the action of any method claim of the '840 Patent (1) perform substantially the same function and (2) work in substantially the same way (3) to achieve substantially the same result as a requirement of any method claim of the '840 Patent.

342.   Under 35 U.S.C. § 271(a), Defendant Fleischman has infringed at least one claim of the '840 Patent.

343.   On information and belief, Defendant Fleischman acted despite an objectively high likelihood that its actions constituted infringement of a valid patent.

344.   On information and belief, Defendant Fleischman knew or it was so obvious that Defendant Fleischman should have known of this objectively defined risk.

345.   On information and belief, Defendant Fleischman willfully infringed the '840 Patent.

346.   On information and belief, one or more of the Defendants have received Benefits from the infringement of the '840 Patent.

347.   Plaintiff has sustained Injuries as a result of the infringement of the '840 Patent.

348.   Plaintiff HVLPO2 has sustained Injuries by Defendant Fleischman's infringing activities, and is entitled to recover money damages from Defendant Fleischman adequate to compensate it for Defendant Fleischman's infringement, but in no event less than a reasonable royalty together with interest and costs as fixed by the Court, and Plaintiff HVLPO2 will continue to suffer damages in the future that will not be mitigated unless Defendant Fleischman's infringing activities are enjoined by this Court.

349.   Plaintiff HVLPO2 has sustained Injuries by Defendant Fleischman's willful infringement and is entitled to recover treble damages from Defendant Fleischman.

350.   The great and irreparable harm to Plaintiff HVLPO2 will only be mitigated if a temporary restraining order and/or preliminary injunction, as well as a permanent injunction, are issued enjoining Defendant Fleischman and his respective servants, employees, representatives, affiliates, and all others acting in active concert therewith from infringing the '840 Patent.

351.   Unless a temporary restraining order and/or preliminary injunction is ordered, Plaintiff will suffer irreparable harm.

352.   There is a substantial likelihood that Plaintiff will prevail on the merits of its claim for relief.

353.   The threatened injury to Plaintiff outweighs any threatened harm a temporary restraining order and/or injunction may cause the Defendants.

354.   Plaintiff has no adequate remedy at law or otherwise for the harm and damage being done.

355.   Such injunctive relief will serve the public interest.

## COUNT XV

## INDIRECT CONTRIBUTORY INFRINGEMENT OF THE '840 PATENT AGAINST DEFENDANT FLEISCHMAN

356.   Plaintiff HVLPO2 re-alleges and incorporates by reference the allegations set forth in Paragraphs 1 through 355, above, as if fully set forth herein.

357.   On information and belief, someone other than Defendant Fleischman has directly infringed the '840 Patent under 35 U.S.C. § 271(a).

358.   On information and belief, Defendant Fleischman has sold, offered for sale, or imported within the United States an apparatus for use in the infringing process.

359.   On information and belief, the apparatus sold, offered for sale, or imported within the United States for use in the infringing process is not a staple article or commodity of commerce capable of substantial non-infringing use.

360.   On information and belief, the apparatus constitutes a material part of at least one method claim of the '840 Patent.

361.   On information and belief, Defendant Fleischman knew that the component was especially made or adapted for use in an infringing method.

362.   Under 35 U.S.C. § 271(c), Defendant Fleischman has infringed at least one claim of the '840 Patent.

363.   On information and belief, Defendant Fleischman acted despite an objectively high likelihood that its actions constituted infringement of a valid patent.

364.   On information and belief, Defendant Fleischman knew or it was so obvious that Defendant Fleischman should have known of this objectively defined risk.

67

365. On information and belief, Defendant Fleischman willfully infringed the '840 Patent.

366. On information and belief, one or more of the Defendants have received Benefits from the infringement of the '840 Patent.

367. Plaintiff has sustained Injuries as a result of the infringement of the '840 Patent.

368. Plaintiff HVLPO2 has sustained Injuries by Defendant Fleischman's infringing activities, and is entitled to recover money damages from Defendant Fleischman adequate to compensate it for Defendant Fleischman's infringement, but in no event less than a reasonable royalty together with interest and costs as fixed by the Court, and Plaintiff HVLPO2 will continue to suffer damages in the future that will not be mitigated unless Defendant Fleischman's infringing activities are enjoined by this Court.

369. Plaintiff HVLPO2 has sustained Injuries by Defendant Fleischman's willful infringement and is entitled to recover treble damages from Defendant Fleischman.

370. The great and irreparable harm to Plaintiff HVLPO2 will only be mitigated if a temporary restraining order and/or preliminary injunction, as well as a permanent injunction, are issued enjoining Defendant Fleischman and his respective servants, employees, representatives, affiliates, and all others acting in active concert therewith from infringing the '840 Patent.

371. Unless a temporary restraining order and/or preliminary injunction is ordered, Plaintiff will suffer irreparable harm.

372. There is a substantial likelihood that Plaintiff will prevail on the merits of its claim for relief.

373.    The threatened injury to Plaintiff outweighs any threatened harm a temporary restraining order and/or injunction may cause the Defendants.

374.    Plaintiff has no adequate remedy at law or otherwise for the harm and damage being done.

375.    Such injunctive relief will serve the public interest.

## COUNT XVI

## INDIRECT INDUCEMENT OF INFRINGEMENT OF THE '840 PATENT AGAINST DEFENDANT FLEISCHMAN

376.    Plaintiff HVLPO2 re-alleges and incorporates by reference the allegations set forth in Paragraphs 1 through 375, above, as if fully set forth herein.

377.    On information and belief, Defendant Fleischman aided, instructed, or otherwise acted with the intent to cause acts by direct infringers that would constitute direct infringement, either literally or under the doctrine of equivalents, of the '840 Patent under 35 U.S.C. § 271(a).

378.    On information and belief, Defendant Fleischman knew of the '840 Patent, or showed willful blindness to the existence of the '840 Patent, at that time.

379.    On information and belief, Defendant Fleischman knew, or should have known, that his actions would result in infringement of at least one claim of the '840 Patent.

380.    On information and belief, direct infringers have infringed at least one patented method claim of the '840 Patent.

381.    Under 35 U.S.C. § 271(b), Defendant Fleischman has infringed at least one claim of the '840 Patent.

69

382.    On information and belief, Defendant Fleischman acted despite an objectively high likelihood that his actions constituted infringement of a valid patent.

383.    On information and belief, Defendant Fleischman knew or it was so obvious that Defendant Fleischman should have known of this objectively defined risk.

384.    On information and belief, Defendant Fleischman willfully infringed the '840 Patent.

385.    On information and belief, one or more of the Defendants have received Benefits from the infringement of the '840 Patent.

386.    Plaintiff has sustained Injuries as a result of the infringement of the '840 Patent.

387.    Plaintiff HVLPO2 has sustained Injuries by Defendant Fleischman's infringing activities, and is entitled to recover money damages from Defendant Fleischman adequate to compensate it for Defendant Fleischman's infringement, but in no event less than a reasonable royalty together with interest and costs as fixed by the Court, and Plaintiff HVLPO2 will continue to suffer damages in the future that will not be mitigated unless Defendant Fleischman's infringing activities are enjoined by this Court.

388.    Plaintiff HVLPO2 has sustained Injuries by Defendant Fleischman's willful infringement and is entitled to recover treble damages from Defendant Fleischman.

389.    The great and irreparable harm to Plaintiff HVLPO2 will only be mitigated if a temporary restraining order and/or preliminary injunction, as well as a permanent injunction, are issued enjoining Defendant Fleischman and his respective servants, employees, representatives, affiliates, and all others acting in active concert therewith from infringing the '840 Patent.

390.    Unless a temporary restraining order and/or preliminary injunction is ordered, Plaintiff will suffer irreparable harm.

391.    There is a substantial likelihood that Plaintiff will prevail on the merits of its claim for relief.

392.    The threatened injury to Plaintiff outweighs any threatened harm a temporary restraining order and/or injunction may cause the Defendants.

393.    Plaintiff has no adequate remedy at law or otherwise for the harm and damage being done.

394.    Such injunctive relief will serve the public interest.

## COUNT XVII

## JOINT DIRECT INFRINGEMENT OF THE '840 PATENT AGAINST DEFENDANT FLEISCHMAN

395.    Plaintiff HVLPO2 re-alleges and incorporates by reference the allegations set forth in Paragraphs 1 through 394, above, as if fully set forth herein.

396.    On information and belief, at least one of or a combination of Defendant Oxygen Frog, Stillwater Glass, and Defendant Fleischman performed, in the United States, all of the steps of at least one method claim of the '840 Patent at the direction of or under the control of Defendant Fleischman.

397.    On information and belief, Defendant Fleischman exercised control over or directed Defendant Oxygen Frog and/or Stillwater Glass when Defendant Oxygen Frog and/or Stillwater Glass performed at least one of the steps of the at least one method claim of the '840 Patent.

398.    On information and belief, Defendant Fleischman acted despite an objectively high likelihood that his actions constituted infringement of a valid patent.

71

399.   On information and belief, Defendant Fleischman knew or it was so obvious that Defendant Fleischman should have known of this objectively defined risk.

400.   On information and belief, Defendant Fleischman willfully infringed the '840 Patent.

401.   On information and belief, one or more of the Defendants have received Benefits from the infringement of the '840 Patent.

402.   Plaintiff has sustained Injuries as a result of the infringement of the '840 Patent.

403.   Plaintiff HVLPO2 has sustained Injuries by Defendant Fleischman's infringing activities, and is entitled to recover money damages from Defendant Fleischman adequate to compensate it for Defendant Fleischman's infringement, but in no event less than a reasonable royalty together with interest and costs as fixed by the Court, and Plaintiff HVLPO2 will continue to suffer damages in the future that will not be mitigated unless Defendant Fleischman's infringing activities are enjoined by this Court.

404.   Plaintiff HVLPO2 has sustained Injuries by Defendant Fleischman's willful infringement and is entitled to recover treble damages from Defendant Fleischman.

405.   The great and irreparable harm to Plaintiff HVLPO2 will only be mitigated if a temporary restraining order and/or preliminary injunction, as well as a permanent injunction, are issued enjoining Defendant Fleischman and his respective servants, employees, representatives, affiliates, and all others acting in active concert therewith from infringing the '840 Patent.

406.   Unless a temporary restraining order and/or preliminary injunction is ordered, Plaintiff will suffer irreparable harm.

407.   There is a substantial likelihood that Plaintiff will prevail on the merits of its claim for relief.

408.   The threatened injury to Plaintiff outweighs any threatened harm a temporary restraining order and/or injunction may cause the Defendants.

409.   Plaintiff has no adequate remedy at law or otherwise for the harm and damage being done.

410.   Such injunctive relief will serve the public interest.

## COUNT XVIII

### DIRECT LITERAL INFRINGEMENT OF THE '941 PATENT AGAINST DEFENDANT FLEISCHMAN

411.   Plaintiff HVLPO2 re-alleges and incorporates by reference the allegations set forth in Paragraphs 1 through 410, above, as if fully set forth herein.

412.   On information and belief, Defendant Fleischman owns, operates, controls, and demonstrates the use of Oxygen Frog Products, including the "OxygenFrog", and related systems.

413.   On information and belief, Defendant Fleischman's Oxygen Frog Products operate in the same manner as at least one of the method claims patented in the '941 Patent.

414.   Under 35 U.S.C. § 271(a), Defendant Fleischman has infringed at least one claim of the '941 Patent.

415.   On information and belief, Defendant Fleischman acted despite an objectively high likelihood that his actions constituted infringement of a valid patent.

416.   On information and belief, Defendant Fleischman knew or it was so obvious that Defendant Fleischman should have known of this objectively defined risk.

417. On information and belief, Defendant Fleischman willfully infringed the '941 Patent.

418. On information and belief, one or more of the Defendants have received Benefits from the infringement of the '941 Patent.

419. Plaintiff has sustained Injuries as a result of the infringement of the '941 Patent.

420. Plaintiff HVLPO2 has sustained Injuries by Defendant Fleischman's infringing activities, and is entitled to recover money damages from Defendant Fleischman adequate to compensate it for Defendant Fleischman's infringement, but in no event less than a reasonable royalty together with interest and costs as fixed by the Court, and Plaintiff HVLPO2 will continue to suffer damages in the future that will not be mitigated unless Defendant Fleischman's infringing activities are enjoined by this Court.

421. Plaintiff HVLPO2 has sustained Injuries by Defendant Fleischman's willful infringement and is entitled to recover treble damages from Defendant Fleischman.

422. The great and irreparable harm to Plaintiff HVLPO2 will only be mitigated if a temporary restraining order and/or preliminary injunction, as well as a permanent injunction, are issued enjoining Defendant Fleischman and his respective servants, employees, representatives, affiliates, and all others acting in active concert therewith from infringing the '941 Patent.

423. Unless a temporary restraining order and/or preliminary injunction is ordered, Plaintiff will suffer irreparable harm.

424. There is a substantial likelihood that Plaintiff will prevail on the merits of its claim for relief.

425.    The threatened injury to Plaintiff outweighs any threatened harm a temporary restraining order and/or injunction may cause the Defendants.

426.    Plaintiff has no adequate remedy at law or otherwise for the harm and damage being done.

427.    Such injunctive relief will serve the public interest.

## COUNT XIX

## DIRECT INFRINGEMENT UNDER THE DOCTRINE OF EQUIVALENTS OF THE '941 PATENT AGAINST DEFENDANT FLEISCHMAN

428.    Plaintiff HVLPO2 re-alleges and incorporates by reference the allegations set forth in Paragraphs 1 through 427, above, as if fully set forth herein.

429.    On information and belief, Defendant Fleischman owns, operates, controls, and demonstrates the use of Oxygen Frog Products, including the "OxygenFrog", and related systems.

430.    On information and belief, in addition to or in the alternative to Plaintiff's allegation of paragraph 413 that "Defendant Fleischman's Oxygen Frog Products operate in the same manner as at least one of the method claims patented in the '941 Patent", Defendant Fleischman's Oxygen Frog Products operate in the same manner as at least one of the method claims patented in the '941 Patent, except that any difference between an action of Defendant Fleischman's Oxygen Frog Products and an action of any method claim of the '941 Patent are (a) insubstantial or (b) the action of the Defendant Fleischman's Oxygen Frog Products and the action of any method claim of the '941 Patent (1) perform substantially the same function and (2) work in substantially the same way (3) to achieve substantially the same result as a requirement of any method claim of the '941 Patent.

75

431.   Under 35 U.S.C. § 271(a), Defendant Fleischman has infringed at least one claim of the '941 Patent.

432.   On information and belief, Defendant Fleischman acted despite an objectively high likelihood that his actions constituted infringement of a valid patent.

433.   On information and belief, Defendant Fleischman knew or it was so obvious that Defendant Fleischman should have known of this objectively defined risk.

434.   On information and belief, Defendant Fleischman willfully infringed the '941 Patent.

435.   On information and belief, one or more of the Defendants have received Benefits from the infringement of the '941 Patent.

436.   Plaintiff has sustained Injuries as a result of the infringement of the '941 Patent.

437.   Plaintiff HVLPO2 has sustained Injuries by Defendant Fleischman's infringing activities, and is entitled to recover money damages from Defendant Fleischman adequate to compensate it for Defendant Fleischman's infringement, but in no event less than a reasonable royalty together with interest and costs as fixed by the Court, and Plaintiff HVLPO2 will continue to suffer damages in the future that will not be mitigated unless Defendant Fleischman's infringing activities are enjoined by this Court.

438.   Plaintiff HVLPO2 has sustained Injuries by Defendant Fleischman's willful infringement and is entitled to recover treble damages from Defendant Fleischman.

439.   The great and irreparable harm to Plaintiff HVLPO2 will only be mitigated if a temporary restraining order and/or preliminary injunction, as well as a permanent injunction, are issued enjoining Defendant Fleischman and his respective servants,

employees, representatives, affiliates, and all others acting in active concert therewith from infringing the '941 Patent.

440.    Unless a temporary restraining order and/or preliminary injunction is ordered, Plaintiff will suffer irreparable harm.

441.    There is a substantial likelihood that Plaintiff will prevail on the merits of its claim for relief.

442.    The threatened injury to Plaintiff outweighs any threatened harm a temporary restraining order and/or injunction may cause the Defendants.

443.    Plaintiff has no adequate remedy at law or otherwise for the harm and damage being done.

444.    Such injunctive relief will serve the public interest.

## COUNT XX

## INDIRECT CONTRIBUTORY INFRINGEMENT OF THE '941 PATENT AGAINST DEFENDANT FLEISCHMAN

445.    Plaintiff HVLPO2 re-alleges and incorporates by reference the allegations set forth in Paragraphs 1 through 444, above, as if fully set forth herein.

446.    On information and belief, someone other than Defendant Fleischman has directly infringed the '941 Patent under 35 U.S.C. § 271(a).

447.    On information and belief, Defendant Fleischman has sold, offered for sale, or imported within the United States an apparatus for use in the infringing process.

448.    On information and belief, the apparatus sold, offered for sale, or imported within the United States for use in the infringing process is not a staple article or commodity of commerce capable of substantial non-infringing use.

449.   On information and belief, the apparatus constitutes a material part of at least one method claim of the '941 Patent.

450.   On information and belief, Defendant Fleischman knew that the component was especially made or adapted for use in an infringing method.

451.   Under 35 U.S.C. § 271(c), Defendant Fleischman has infringed at least one claim of the '941 Patent.

452.   On information and belief, Defendant Fleischman acted despite an objectively high likelihood that his actions constituted infringement of a valid patent.

453.   On information and belief, Defendant Fleischman knew or it was so obvious that Defendant Fleischman should have known of this objectively defined risk.

454.   On information and belief, Defendant Fleischman willfully infringed the '941 Patent.

455.   On information and belief, one or more of the Defendants have received Benefits from the infringement of the '941 Patent.

456.   Plaintiff has sustained Injuries as a result of the infringement of the '941 Patent.

457.   Plaintiff HVLPO2 has sustained Injuries by Defendant Fleischman's infringing activities, and is entitled to recover money damages from Defendant Fleischman adequate to compensate it for Defendant Fleischman's infringement, but in no event less than a reasonable royalty together with interest and costs as fixed by the Court, and Plaintiff HVLPO2 will continue to suffer damages in the future that will not be mitigated unless Defendant Fleischman's infringing activities are enjoined by this Court.

458.    Plaintiff HVLPO2 has sustained Injuries by Defendant Fleischman's willful infringement and is entitled to recover treble damages from Defendant Fleischman.

459.    The great and irreparable harm to Plaintiff HVLPO2 will only be mitigated if a temporary restraining order and/or preliminary injunction, as well as a permanent injunction, are issued enjoining Defendant Fleischman and his respective servants, employees, representatives, affiliates, and all others acting in active concert therewith from infringing the '941 Patent.

460.    Unless a temporary restraining order and/or preliminary injunction is ordered, Plaintiff will suffer irreparable harm.

461.    There is a substantial likelihood that Plaintiff will prevail on the merits of its claim for relief.

462.    The threatened injury to Plaintiff outweighs any threatened harm a temporary restraining order and/or injunction may cause the Defendants.

463.    Plaintiff has no adequate remedy at law or otherwise for the harm and damage being done.

464.    Such injunctive relief will serve the public interest.

## COUNT XXI

## INDIRECT INDUCEMENT OF INFRINGEMENT OF THE '941 PATENT AGAINST DEFENDANT FLEISCHMAN

465.    Plaintiff HVLPO2 re-alleges and incorporates by reference the allegations set forth in Paragraphs 1 through 464, above, as if fully set forth herein.

466.    On information and belief, Defendant Fleischman aided, instructed, or otherwise acted with the intent to cause acts by direct infringers that would constitute

direct infringement, either literally or under the doctrine of equivalents, of the '941 Patent under 35 U.S.C. § 271(a).

467.    On information and belief, Defendant Fleischman knew of the '941 Patent, or showed willful blindness to the existence of the '941 Patent, at that time.

468.    On information and belief, Defendant Fleischman knew, or should have known, that its actions would result in infringement of at least one claim of the '941 Patent.

469.    On information and belief, direct infringers have infringed at least one patented method claim of the '941 Patent.

470.    Under 35 U.S.C. § 271(b), Defendant Fleischman has infringed at least one claim of the '941 Patent.

471.    On information and belief, Defendant Fleischman acted despite an objectively high likelihood that his actions constituted infringement of a valid patent.

472.    On information and belief, Defendant Fleischman knew or it was so obvious that Defendant Fleischman should have known of this objectively defined risk.

473.    On information and belief, Defendant Fleischman willfully infringed the '941 Patent.

474.    On information and belief, one or more of the Defendants have received Benefits from the infringement of the '941 Patent.

475.    Plaintiff has sustained Injuries as a result of the infringement of the '941 Patent.

476.    Plaintiff has sustained Injuries by Defendant Fleischman's infringing activities, and is entitled to recover money damages from Defendant Fleischman

adequate to compensate it for Defendant Fleischman's infringement, but in no event less than a reasonable royalty together with interest and costs as fixed by the Court, and Plaintiff HVLPO2 will continue to suffer damages in the future that will not be mitigated unless Defendant Fleischman's infringing activities are enjoined by this Court.

477.   Plaintiff has sustained Injuries by Defendant Fleischman's willful infringement and is entitled to recover treble damages from Defendant Fleischman.

478.   The great and irreparable harm to Plaintiff HVLPO2 will only be mitigated if a temporary restraining order and/or preliminary injunction, as well as a permanent injunction, are issued enjoining Defendant Fleischman and his respective servants, employees, representatives, affiliates, and all others acting in active concert therewith from infringing the '941 Patent.

479.   Unless a temporary restraining order and/or preliminary injunction is ordered, Plaintiff will suffer irreparable harm.

480.   There is a substantial likelihood that Plaintiff will prevail on the merits of its claim for relief.

481.   The threatened injury to Plaintiff outweighs any threatened harm a temporary restraining order and/or injunction may cause the Defendants.

482.   Plaintiff has no adequate remedy at law or otherwise for the harm and damage being done.

483.   Such injunctive relief will serve the public interest.

**COUNT XXII**

**JOINT DIRECT INFRINGEMENT OF THE '941 PATENT
AGAINST DEFENDANT FLEISCHMAN**

484.    Plaintiff HVLPO2 re-alleges and incorporates by reference the allegations set forth in Paragraphs 1 through 483, above, as if fully set forth herein.

485.    On information and belief, at least one of or a combination of Defendant Oxygen Frog, Stillwater Glass, and Defendant Fleischman performed, in the United States, all of the steps of at least one method claim of the '941 Patent at the direction of or under the control of Defendant Fleischman.

486.    On information and belief, Defendant Fleischman exercised control over or directed Defendant Oxygen Frog and/or Stillwater Glass when Defendant Oxygen Frog and/or Stillwater Glass performed at least one of the steps of the at least one method claim of the '941 Patent.

487.    On information and belief, Defendant Fleischman acted despite an objectively high likelihood that his actions constituted infringement of a valid patent.

488.    On information and belief, Defendant Fleischman knew or it was so obvious that Defendant Fleischman should have known of this objectively defined risk.

489.    On information and belief, Defendant Fleischman willfully infringed the '941 Patent.

490.    On information and belief, one or more of the Defendants have received Benefits from the infringement of the '941 Patent.

491.    Plaintiff has sustained Injuries as a result of the infringement of the '941 Patent.

492.   Plaintiff HVLPO2 has sustained Injuries by Defendant Fleischman's infringing activities, and is entitled to recover money damages from Defendant Fleischman adequate to compensate it for Defendant Fleischman's infringement, but in no event less than a reasonable royalty together with interest and costs as fixed by the Court, and Plaintiff HVLPO2 will continue to suffer damages in the future that will not be mitigated unless Defendant Fleischman's infringing activities are enjoined by this Court.

493.   Plaintiff HVLPO2 has sustained Injuries by Defendant Fleischman's willful infringement and is entitled to recover treble damages from Defendant Fleischman.

494.   The great and irreparable harm to Plaintiff HVLPO2 will only be mitigated if a temporary restraining order and/or preliminary injunction, as well as a permanent injunction, are issued enjoining Defendant Fleischman and his respective servants, employees, representatives, affiliates, and all others acting in active concert therewith from infringing the '941 Patent.

495.   Unless a temporary restraining order and/or preliminary injunction is ordered, Plaintiff will suffer irreparable harm.

496.   There is a substantial likelihood that Plaintiff will prevail on the merits of its claim for relief.

497.   The threatened injury to Plaintiff outweighs any threatened harm a temporary restraining order and/or injunction may cause the Defendants.

498.   Plaintiff has no adequate remedy at law or otherwise for the harm and damage being done.

499.   Such injunctive relief will serve the public interest.

**COUNT XXIII**

**DIRECT LITERAL INFRINGEMENT OF THE '434 PATENT
AGAINST DEFENDANT FLEISCHMAN**

500.    Plaintiff HVLPO2 re-alleges and incorporates by reference the allegations set forth in Paragraphs 1 through 499, above, as if fully set forth herein.

501.    On information and belief, Defendant Fleischman has made, sold, offered for sale, and used Oxygen Frog Products, including the "OxygenFrog", and related systems.

502.    On information and belief, Defendant Fleischman has made, sold, offered for sale, and used expanded Oxygen Frog Products.

503.    On information and belief, Defendant Fleischman's Oxygen Frog Products and/or expanded Oxygen Frog Products meet all the requirements of at least one of the apparatus claims patented in the '434 Patent.

504.    Under 35 U.S.C. § 271(a), Defendant Fleischman has infringed at least one claim of the '434 Patent.

505.    On information and belief, Defendant Fleischman acted despite an objectively high likelihood that its actions constituted infringement of a valid patent.

506.    On information and belief, Defendant Fleischman knew or it was so obvious that Defendant Fleischman should have known of this objectively defined risk.

507.    On information and belief, Defendant Fleischman willfully infringed the '434 Patent.

508.    On information and belief, one or more of the Defendants have received Benefits from the infringement of the '434 Patent.

509.   Plaintiff has sustained Injuries as a result of the infringement of the '434 Patent.

510.   Plaintiff HVLPO2 has sustained Injuries by Defendant Fleischman's infringing activities, and is entitled to recover money damages from Defendant Fleischman adequate to compensate it for Defendant Fleischman's infringement, but in no event less than a reasonable royalty together with interest and costs as fixed by the Court, and Plaintiff HVLPO2 will continue to suffer damages in the future that will not be mitigated unless Defendant Fleischman's infringing activities are enjoined by this Court.

511.   Plaintiff HVLPO2 has sustained Injuries by Defendant Fleischman's willful infringement and is entitled to recover treble damages from Defendant Fleischman.

512.   The great and irreparable harm to Plaintiff HVLPO2 will only be mitigated if a temporary restraining order and/or preliminary injunction, as well as a permanent injunction, are issued enjoining Defendant Fleischman and his respective servants, employees, representatives, affiliates, and all others acting in active concert therewith from infringing the '434 Patent.

513.   Unless a temporary restraining order and/or preliminary injunction is ordered, Plaintiff will suffer irreparable harm.

514.   There is a substantial likelihood that Plaintiff will prevail on the merits of its claim for relief.

515.   The threatened injury to Plaintiff outweighs any threatened harm a temporary restraining order and/or injunction may cause the Defendants.

516.   Plaintiff has no adequate remedy at law or otherwise for the harm and damage being done.

517.   Such injunctive relief will serve the public interest.

## COUNT XXIV

### DIRECT INFRINGEMENT UNDER THE DOCTRINE OF EQUIVALENTS
### OF THE '434 PATENT AGAINST DEFENDANT FLEISCHMAN

518.   Plaintiff HVLPO2 re-alleges and incorporates by reference the allegations set forth in Paragraphs 1 through 517, above, as if fully set forth herein.

519.   On information and belief, Defendant Fleischman has made, sold, offered for sale, and used Oxygen Frog Products, including the "OxygenFrog", and related systems.

520.   On information and belief, Defendant Fleischman has made, sold, offered for sale, and used expanded Oxygen Frog Products.

521.   On information and belief, in addition to or in the alternative to Plaintiff's allegation of paragraph 503 that "Defendant Fleischman's Oxygen Frog Products and/or expanded Oxygen Frog Products meet all the requirements of at least one of the apparatus claims patented in the '434 Patent", Defendant Fleischman's Oxygen Frog Products and/or expanded Oxygen Frog Products meet all the requirements of at least one of the apparatus claims patented in the '434 Patent, except that any difference between a structure of Defendant Fleischman's Oxygen Frog Products and/or expanded Oxygen Frog Products and a structure of any apparatus claim of the '434 Patent are (a) insubstantial or (b) the structure of the Defendant Fleischman's Oxygen Frog Products and/or expanded Oxygen Frog Products and the structure of any apparatus claim of the '434 Patent (1) perform substantially the same function and (2) work in substantially the same way (3) to achieve substantially the same result as a requirement of any apparatus claim of the '434 Patent.

522. Under 35 U.S.C. § 271(a), Defendant Fleischman has infringed at least one claim of the '434 Patent.

523. On information and belief, Defendant Fleischman acted despite an objectively high likelihood that its actions constituted infringement of a valid patent.

524. On information and belief, Defendant Fleischman knew or it was so obvious that Defendant Fleischman should have known of this objectively defined risk.

525. On information and belief, Defendant Fleischman willfully infringed the '434 Patent.

526. On information and belief, one or more of the Defendants have received Benefits from the infringement of the '434 Patent.

527. Plaintiff has sustained Injuries as a result of the infringement of the '434 Patent.

528. Plaintiff HVLPO2 has sustained Injuries by Defendant Fleischman's infringing activities, and is entitled to recover money damages from Defendant Fleischman adequate to compensate it for Defendant Fleischman's infringement, but in no event less than a reasonable royalty together with interest and costs as fixed by the Court, and Plaintiff HVLPO2 will continue to suffer damages in the future that will not be mitigated unless Defendant Fleischman's infringing activities are enjoined by this Court.

529. Plaintiff HVLPO2 has sustained Injuries by Defendant Fleischman's willful infringement and is entitled to recover treble damages from Defendant Fleischman.

530. The great and irreparable harm to Plaintiff HVLPO2 will only be mitigated if a temporary restraining order and/or preliminary injunction, as well as a permanent injunction, are issued enjoining Defendant Fleischman and his respective servants,

employees, representatives, affiliates, and all others acting in active concert therewith from infringing the '434 Patent.

531.   Unless a temporary restraining order and/or preliminary injunction is ordered, Plaintiff will suffer irreparable harm.

532.   There is a substantial likelihood that Plaintiff will prevail on the merits of its claim for relief.

533.   The threatened injury to Plaintiff outweighs any threatened harm a temporary restraining order and/or injunction may cause the Defendants.

534.   Plaintiff has no adequate remedy at law or otherwise for the harm and damage being done.

535.   Such injunctive relief will serve the public interest.

## COUNT XXV

## INDIRECT CONTRIBUTORY INFRINGEMENT OF THE '434 PATENT AGAINST DEFENDANT FLEISCHMAN

536.   Plaintiff HVLPO2 re-alleges and incorporates by reference the allegations set forth in Paragraphs 1 through 535, above, as if fully set forth herein.

537.   On information and belief, someone other than Defendant Fleischman has directly infringed the '434 Patent under 35 U.S.C. § 271(a).

538.   On information and belief, Defendant Fleischman has sold, offered for sale, or imported within the United States an apparatus for use in an infringing product or process.

539.   On information and belief, the apparatus sold, offered for sale, or imported within the United States for use in the infringing product or process is not a staple article or commodity of commerce capable of substantial non-infringing use.

540.   On information and belief, the apparatus constitutes a material part of at least one apparatus claim of the '434 Patent.

541.   On information and belief, Defendant Fleischman knew that the component was especially made or adapted for use in the infringing product or process.

542.   Under 35 U.S.C. § 271(c), Defendant Fleischman has infringed at least one claim of the '434 Patent.

543.   On information and belief, Defendant Fleischman acted despite an objectively high likelihood that its actions constituted infringement of a valid patent.

544.   On information and belief, Defendant Fleischman knew or it was so obvious that Defendant Fleischman should have known of this objectively defined risk.

545.   On information and belief, Defendant Fleischman willfully infringed the '434 Patent.

546.   On information and belief, one or more of the Defendants have received Benefits from the infringement of the '434 Patent.

547.   Plaintiff has sustained Injuries as a result of the infringement of the '434 Patent.

548.   Plaintiff HVLPO2 has sustained Injuries by Defendant Fleischman's infringing activities, and is entitled to recover money damages from Defendant Fleischman adequate to compensate it for Defendant Fleischman's infringement, but in no event less than a reasonable royalty together with interest and costs as fixed by the Court, and Plaintiff HVLPO2 will continue to suffer damages in the future that will not be mitigated unless Defendant Fleischman's infringing activities are enjoined by this Court.

549.   Plaintiff HVLPO2 has sustained Injuries by Defendant Fleischman's willful infringement and is entitled to recover treble damages from Defendant Fleischman.

550.   The great and irreparable harm to Plaintiff HVLPO2 will only be mitigated if a temporary restraining order and/or preliminary injunction, as well as a permanent injunction, are issued enjoining Defendant Fleischman and his respective servants, employees, representatives, affiliates, and all others acting in active concert therewith from infringing the '434 Patent.

551.   Unless a temporary restraining order and/or preliminary injunction is ordered, Plaintiff will suffer irreparable harm.

552.   There is a substantial likelihood that Plaintiff will prevail on the merits of its claim for relief.

553.   The threatened injury to Plaintiff outweighs any threatened harm a temporary restraining order and/or injunction may cause the Defendants.

554.   Plaintiff has no adequate remedy at law or otherwise for the harm and damage being done.

555.   Such injunctive relief will serve the public interest.

### COUNT XXVI

### INDIRECT INDUCEMENT OF INFRINGEMENT OF THE '434 PATENT AGAINST DEFENDANT FLEISCHMAN

556.   Plaintiff HVLPO2 re-alleges and incorporates by reference the allegations set forth in Paragraphs 1 through 555, above, as if fully set forth herein.

557.   On information and belief, Defendant Fleischman aided, instructed, or otherwise acted with the intent to cause acts by direct infringers that would constitute

direct infringement, either literally or under the doctrine of equivalents, of the '434 Patent under 35 U.S.C. § 271(a).

558.   On information and belief, Defendant Fleischman knew of the '434 Patent, or showed willful blindness to the existence of the '434 Patent, at that time.

559.   On information and belief, Defendant Fleischman knew, or should have known, that his actions would result in infringement of at least one claim of the '434 Patent.

560.   On information and belief, direct infringers have infringed at least one patented apparatus claim of the '434 Patent.

561.   Under 35 U.S.C. § 271(b), Defendant Fleischman has infringed at least one claim of the '434 Patent.

562.   On information and belief, Defendant Fleischman acted despite an objectively high likelihood that his actions constituted infringement of a valid patent.

563.   On information and belief, Defendant Fleischman knew or it was so obvious that Defendant Fleischman should have known of this objectively defined risk.

564.   On information and belief, Defendant Fleischman willfully infringed the '434 Patent.

565.   On information and belief, one or more of the Defendants have received Benefits from the infringement of the '434 Patent.

566.   Plaintiff has sustained Injuries as a result of the infringement of the '434 Patent.

567.   Plaintiff HVLPO2 has sustained Injuries by Defendant Fleischman's infringing activities, and is entitled to recover money damages from Defendant

Fleischman adequate to compensate it for Defendant Fleischman's infringement, but in no event less than a reasonable royalty together with interest and costs as fixed by the Court, and Plaintiff HVLPO2 will continue to suffer damages in the future that will not be mitigated unless Defendant Fleischman's infringing activities are enjoined by this Court.

568.   Plaintiff HVLPO2 has sustained Injuries by Defendant Fleischman's willful infringement and is entitled to recover treble damages from Defendant Fleischman.

569.   The great and irreparable harm to Plaintiff HVLPO2 will only be mitigated if a temporary restraining order and/or preliminary injunction, as well as a permanent injunction, are issued enjoining Defendant Fleischman and his respective servants, employees, representatives, affiliates, and all others acting in active concert therewith from infringing the '434 Patent.

570.   Unless a temporary restraining order and/or preliminary injunction is ordered, Plaintiff will suffer irreparable harm.

571.   There is a substantial likelihood that Plaintiff will prevail on the merits of its claim for relief.

572.   The threatened injury to Plaintiff outweighs any threatened harm a temporary restraining order and/or injunction may cause the Defendants.

573.   Plaintiff has no adequate remedy at law or otherwise for the harm and damage being done.

574.   Such injunctive relief will serve the public interest.

## COUNT XXVII

## DEFAMATION (LIBEL AND/OR SLANDER) AGAINST
## DEFENDANT OXYGEN FROG

575.   Plaintiff HVLPO2 re-alleges and incorporates by reference the allegations set forth in Paragraphs 1 through 574, above, as if fully set forth herein.

576.   On information and belief, Defendant Oxygen Frog's Statements are false and defamatory.  (*See* ¶ 73(a)-(e).)

577.   By publishing the Statements on Defendant Oxygen Frog's website, the Glassifieds, and Facebook, Defendant Oxygen Frog has published defamatory statements to a wide range of persons in the public.

578.   Defendant Oxygen Frog negligently published the false and defamatory Statements about Plaintiff HVLPO2, injuring Plaintiff HVLPO2.

579.   On information and belief, Defendant Oxygen Frog published the false and defamatory Statements with the knowledge that the Statements were false, or with reckless disregard as to the falsity of the Statements.

580.   On information and belief, one or more of the Defendants have received Benefits from the false and defamatory Statements about Plaintiff.

581.   Plaintiff has sustained Injuries as a result of the false and defamatory Statements about Plaintiff.

582.   Plaintiff HVLPO2 has sustained Injuries by Defendant Oxygen Frog's false and defamatory Statements about Plaintiff HVLPO2, and is entitled to recover money damages from Defendant Oxygen Frog and Plaintiff HVLPO2 will continue to suffer damages in the future that will not be mitigated unless Defendant Oxygen Frog's false and defamatory activities are enjoined by this Court.

583.   The great and irreparable harm to Plaintiff HVLPO2 will only be mitigated if a temporary restraining order and/or preliminary injunction, as well as a permanent injunction, are issued enjoining Defendant Oxygen Frog and its respective agents, owners, officers, servants, employees, representatives, affiliates, and all others acting in active concert therewith from making or publishing false and defamatory statements about Plaintiff HVLPO2.

584.   Unless a temporary restraining order and/or preliminary injunction is ordered, Plaintiff will suffer irreparable harm.

585.   There is a substantial likelihood that Plaintiff will prevail on the merits of its claim for relief.

586.   The threatened injury to Plaintiff outweighs any threatened harm a temporary restraining order and/or injunction may cause the Defendants.

587.   Plaintiff has no adequate remedy at law or otherwise for the harm and damage being done.

588.   Such injunctive relief will serve the public interest.

## COUNT XXVIII

## DEFAMATION (LIBEL AND/OR SLANDER) AGAINST DEFENDANTFLEISCHMAN

589.   Plaintiff HVLPO2 re-alleges and incorporates by reference the allegations set forth in Paragraphs 1 through 588, above, as if fully set forth herein.

590.   On information and belief, Defendant Fleischman's Statements are false and defamatory.  (*See* 73(a)-(e).))

591.   By publishing the Statements on Defendant Oxygen Frog's website, the Glassifieds, and Facebook, Defendant Fleischman has published defamatory statements to a wide range of persons in the public.

94

592.   Defendant Fleischman negligently published the false and defamatory Statements about Plaintiff HVLPO2, injuring Plaintiff HVLPO2.

593.   On information and belief, Defendant Fleischman published the false and defamatory Statements with the knowledge that the Statements were false, or with reckless disregard as to the falsity of the Statements.

594.   On information and belief, one or more of the Defendants have received Benefits from the false and defamatory Statements about Plaintiff.

595.   Plaintiff has sustained Injuries as a result of the false and defamatory Statements about Plaintiff.

596.   Plaintiff HVLPO2 has sustained Injuries by Defendant Fleischman's false and defamatory Statements about Plaintiff HVLPO2, and is entitled to recover money damages from Defendant Fleischman and Plaintiff HVLPO2 will continue to suffer damages in the future that will not be mitigated unless Defendant Fleischman's false and defamatory activities are enjoined by this Court.

597.   The great and irreparable harm to Plaintiff HVLPO2 will only be mitigated if a temporary restraining order and/or preliminary injunction, as well as a permanent injunction, are issued enjoining Defendant Fleischman and his respective agents, servants, employees, representatives, affiliates, and all others acting in active concert therewith from making or publishing false and defamatory statements about Plaintiff HVLPO2.

598.   Unless a temporary restraining order and/or preliminary injunction is ordered, Plaintiff will suffer irreparable harm.

599.   There is a substantial likelihood that Plaintiff will prevail on the merits of its claim for relief.

600.   The threatened injury to Plaintiff outweighs any threatened harm a temporary restraining order and/or injunction may cause the Defendants.

601.   Plaintiff has no adequate remedy at law or otherwise for the harm and damage being done.

602.   Such injunctive relief will serve the public interest.

## COUNT XXIX

## COMMERCIAL DISPARAGEMENT AGAINST DEFENDANT OXYGEN FROG

603.   Plaintiff HVLPO2 re-alleges and incorporates by reference the allegations set forth in Paragraphs 1 through 602, above, as if fully set forth herein.

604.   On information and belief, Defendant Oxygen Frog's Statements are false and have disparaged Plaintiff HVLPO2.  (*See* ¶ 73(a)-(e).)

605.   On information and belief, by publishing the Statements on Defendant Oxygen Frog's website, the Glassifieds, and Facebook, Defendant Oxygen Frog has published false and disparaging statements to a wide range of persons in the public.

606.   On information and belief, Defendant Oxygen Frog negligently published the false and disparaging Statements about Plaintiff HVLPO2, causing Plaintiff HVLPO2 to suffer damages, including lost sales and injury to Plaintiff HVLPO2's and/or HVLPO2's products' goodwill and reputation, causing customers and potential customers to regard Plaintiff HVLPO2 as disreputable, and imputing deceit, dishonesty and reprehensible conduct to Plaintiff HVLPO2.

607.   On information and belief, Defendant Oxygen Frog published the false and disparaging Statements with the knowledge that the Statements were false, or with reckless disregard as to the falsity of the Statements.

608.   Defendant Oxygen Frog negligently published the false and disparaging Statements about Plaintiff HVLPO2, injuring Plaintiff HVLPO2.

609.   On information and belief, one or more of the Defendants have received Benefits from the false and disparaging Statements about Plaintiff.

610.   Plaintiff has sustained Injuries as a result of the false and disparaging Statements about Plaintiff.

611.   Plaintiff HVLPO2 has sustained Injuries by Defendant Oxygen Frog's false and disparaging Statements about Plaintiff HVLPO2, and is entitled to recover money damages from Defendant Oxygen Frog and Plaintiff HVLPO2 will continue to suffer damages in the future that will not be mitigated unless Defendant Oxygen Frog's false and disparaging activities are enjoined by this Court.

612.   The great and irreparable harm to Plaintiff HVLPO2 will only be mitigated if a temporary restraining order and/or preliminary injunction, as well as a permanent injunction, are issued enjoining Defendant Oxygen Frog and its respective agents, owners, officers, servants, employees, representatives, affiliates, and all others acting in active concert therewith from making or publishing false and disparaging statements about Plaintiff HVLPO2.

613.   Unless a temporary restraining order and/or preliminary injunction is ordered, Plaintiff will suffer irreparable harm.

614. There is a substantial likelihood that Plaintiff will prevail on the merits of its claim for relief.

615. The threatened injury to Plaintiff outweighs any threatened harm a temporary restraining order and/or injunction may cause the Defendants.

616. Plaintiff has no adequate remedy at law or otherwise for the harm and damage being done.

617. Such injunctive relief will serve the public interest.

## COUNT XXX

## COMMERCIAL DISPARAGEMENT AGAINST DEFENDANT FLEISCHMAN

618. Plaintiff HVLPO2 re-alleges and incorporates by reference the allegations set forth in Paragraphs 1 through 617, above, as if fully set forth herein.

619. On information and belief, Defendant Fleischman's Statements are false and have disparaged Plaintiff HVLPO2. (*See* ¶ 73(a)-(e).)

620. On information and belief, by publishing the Statements on Defendant Oxygen Frog's website, the Glassifieds, and Facebook, Defendant Fleischman has published false and disparaging statements to a wide range of persons in the public.

621. On information and belief, Defendant Fleischman negligently published the false and disparaging Statements about Plaintiff HVLPO2, causing Plaintiff HVLPO2 to suffer damages, including lost sales and injury to Plaintiff HVLPO2's and/or HVLPO2's products' goodwill and reputation, causing customers and potential customers to regard Plaintiff HVLPO2 as disreputable, and imputing deceit, dishonesty and reprehensible conduct to Plaintiff HVLPO2.

622.    On information and belief, Defendant Fleischman published the false and disparaging Statements with the knowledge that the Statements were false, or with reckless disregard as to the falsity of the Statements.

623.    Defendant Fleischman negligently published the false and disparaging Statements about Plaintiff HVLPO2, injuring Plaintiff HVLPO2.

624.    On information and belief, one or more of the Defendants have received Benefits from the false and disparaging Statements about Plaintiff.

625.    Plaintiff has sustained Injuries as a result of the false and disparaging Statements about Plaintiff.

626.    Plaintiff HVLPO2 has sustained Injuries by Defendant Fleischman's false and disparaging Statements about Plaintiff HVLPO2, and is entitled to recover money damages from Defendant Fleischman and Plaintiff HVLPO2 will continue to suffer damages in the future that will not be mitigated unless Defendant Fleischman's false and disparaging activities are enjoined by this Court.

627.    The great and irreparable harm to Plaintiff HVLPO2 will only be mitigated if a temporary restraining order and/or preliminary injunction, as well as a permanent injunction, are issued enjoining Defendant Fleischman and his respective agents, servants, employees, representatives, affiliates, and all others acting in active concert therewith from making or publishing false and disparaging statements about Plaintiff HVLPO2.

628.    Unless a temporary restraining order and/or preliminary injunction is ordered, Plaintiff will suffer irreparable harm.

629.    There is a substantial likelihood that Plaintiff will prevail on the merits of its claim for relief.

630.    The threatened injury to Plaintiff outweighs any threatened harm a temporary restraining order and/or injunction may cause the Defendants.

631.    Plaintiff has no adequate remedy at law or otherwise for the harm and damage being done.

632.    Such injunctive relief will serve the public interest.

<strong>COUNT XXXI</strong>

<strong>ENGAGING IN DECEPTIVE AND UNFAIR TRADE PRACTICES UNDER FLORIDA'S DECEPTIVE AND UNFAIR TRADE PRACTICES ACT, FLA. STAT. §§ 501.201  ET SEQ., AGAINST DEFENDANT OXYGEN FROG</strong>

633.    Plaintiff HVLPO2 re-alleges and incorporates by reference the allegations set forth in Paragraphs 1 through 632, above, as if fully set forth herein.

634.    On information and belief, Defendant Oxygen Frog has engaged in a deceptive and unfair trade practice, in the course of Defendant Oxygen Frog's business, vocation, or occupation by disparaging the goods, services, or business of Plaintiff HVLPO2 by one or more false or misleading representations of fact.

635.    On information and belief, Defendant Oxygen Frog's Statements are false and have disparaged Plaintiff HVLPO2.  (*See* ¶ 73(a)-(e).)

636.    On information and belief, by publishing the Statements on Defendant Oxygen Frog's website, the Glassifieds, and Facebook, Defendant Oxygen Frog has published false and disparaging statements to a wide range of persons in the public.

637.    On information and belief, Defendant Oxygen Frog negligently published the false and disparaging Statements about Plaintiff HVLPO2, causing Plaintiff HVLPO2

100

to suffer damages, including lost sales and injury to Plaintiff HVLPO2's and/or HVLPO2's products' goodwill and reputation, causing customers and potential customers to regard Plaintiff HVLPO2 as disreputable, and imputing deceit, dishonesty and reprehensible conduct to Plaintiff HVLPO2.

638.   On information and belief, Defendant Oxygen Frog published the false and disparaging Statements with the knowledge that the Statements were false, or with reckless disregard as to the falsity of the Statements.

639.   On information and belief, Defendant Oxygen Frog has conducted "[u]nfair methods of competition, unconscionable acts or practices," and/or "unfair or deceptive acts or practices in the conduct of [Defendant Oxygen Frog's] trade or commerce". *See* Fla. Stat. § 501.204.

640.   On information and belief, Defendant Oxygen Frog has violated Fla. Stat. §§ 501.201 *et seq.*, including but not limited to Fla. Stat. § 501.204.

641.   On information and belief, one or more of the Defendants have received Benefits from the false and disparaging Statements about Plaintiff HVLPO2.

642.   Plaintiff has sustained Injuries as a result of the false and disparaging Statements about Plaintiff.

643.   Plaintiff HVLPO2 has sustained Injuries by Defendant Oxygen Frog's false and disparaging Statements about Plaintiff HVLPO2, and is entitled to recover money damages from Defendant Oxygen Frog and Plaintiff HVLPO2 will continue to suffer damages in the future that will not be mitigated unless Defendant Oxygen Frog's false and disparaging activities are enjoined by this Court.

644.    The great and irreparable harm to Plaintiff HVLPO2 will only be mitigated if a temporary restraining order and/or preliminary injunction, as well as a permanent injunction, are issued enjoining Defendant Oxygen Frog and its respective agents, owners, officers, servants, employees, representatives, affiliates, and all others acting in active concert therewith from making or publishing false and disparaging statements about Plaintiff HVLPO2.

645.    Unless a temporary restraining order and/or preliminary injunction is ordered, Plaintiff will suffer irreparable harm.

646.    There is a substantial likelihood that Plaintiff will prevail on the merits of its claim for relief.

647.    The threatened injury to Plaintiff outweighs any threatened harm a temporary restraining order and/or injunction may cause the Defendants.

648.    Plaintiff has no adequate remedy at law or otherwise for the harm and damage being done.

649.    Such injunctive relief will serve the public interest.

## COUNT XXXII

## ENGAGING IN DECEPTIVE AND UNFAIR TRADE PRACTICES UNDER FLORIDA'S DECEPTIVE AND UNFAIR TRADE PRACTICES ACT, FLA. STAT. §§ 501.201 ET SEQ., AGAINST DEFENDANT FLEISCHMAN

650.    Plaintiff HVLPO2 re-alleges and incorporates by reference the allegations set forth in Paragraphs 1 through 649, above, as if fully set forth herein.

651.    On information and belief, Defendant Fleischman has engaged in a deceptive trade practice, in the course of Defendant Fleischman's business, vocation, or

occupation by disparaging the goods, services, or business of Plaintiff HVLPO2 by one or more false or misleading representations of fact.

652.   On information and belief, Defendant Fleischman's Statements are false and have disparaged Plaintiff HVLPO2.  (*See* ¶ 73(a)-(e).)

653.   On information and belief, by publishing the Statements on Defendant Oxygen Frog's website, the Glassifieds, and Facebook, Defendant Fleischman has published false and disparaging statements to a wide range of persons in the public.

654.   On information and belief, Defendant Fleischman negligently published the false and disparaging Statements about Plaintiff HVLPO2, causing Plaintiff HVLPO2 to suffer damages, including lost sales and injury to Plaintiff HVLPO2's and/or HVLPO2's products' goodwill and reputation, causing customers and potential customers to regard Plaintiff HVLPO2 as disreputable, and imputing deceit, dishonesty and reprehensible conduct to Plaintiff HVLPO2.

655.   On information and belief, Defendant Fleischman published the false and disparaging Statements with the knowledge that the Statements were false, or with reckless disregard as to the falsity of the Statements.

656.   On information and belief, Defendant Fleischman has conducted "[u]nfair methods of competition, unconscionable acts or practices," and/or "unfair or deceptive acts or practices in the conduct of [Defendant Fleischman's] trade or commerce".  *See* Fla. Stat. § 501.204.

657.   On information and belief, Defendant Fleischman has violated Fla. Stat. §§ 501.201 *et seq.*, including but not limited to Fla. Stat. § 501.204.

658.   On information and belief, one or more of the Defendants have received Benefits from the false and disparaging Statements about Plaintiff.

659.   Plaintiff has sustained Injuries as a result of the false and disparaging Statements about Plaintiff.

660.   Plaintiff HVLPO2 has sustained Injuries by Defendant Fleischman's false and disparaging Statements about Plaintiff HVLPO2, and is entitled to recover money damages from Defendant Fleischman and Plaintiff HVLPO2 will continue to suffer damages in the future that will not be mitigated unless Defendant Fleischman's false and disparaging activities are enjoined by this Court.

661.   The great and irreparable harm to Plaintiff HVLPO2 will only be mitigated if a temporary restraining order and/or preliminary injunction, as well as a permanent injunction, are issued enjoining Defendant Fleischman and his respective agents, officers, servants, employees, representatives, affiliates, and all others acting in active concert therewith from making or publishing false and disparaging statements about Plaintiff HVLPO2.

662.   Unless a temporary restraining order and/or preliminary injunction is ordered, Plaintiff will suffer irreparable harm.

663.   There is a substantial likelihood that Plaintiff will prevail on the merits of its claim for relief.

664.   The threatened injury to Plaintiff outweighs any threatened harm a temporary restraining order and/or injunction may cause the Defendants.

665.   Plaintiff has no adequate remedy at law or otherwise for the harm and damage being done.

666.    Such injunctive relief will serve the public interest.

## COUNT XXXIII

## COMMON LAW TRADEMARK INFRINGEMENT OF "HV60" AND UNFAIR COMPETITION AGAINST DEFENDANT OXYGEN FROG

667.    Plaintiff HVLPO2 re-alleges and incorporates by reference the allegations set forth in Paragraphs 1 through 666, above, as if fully set forth herein.

668.    Plaintiff owns and has continuously used the common law mark of "HV60" since at least May of 2012.

669.    On information and belief, Defendant Oxygen Frog's use of the mark of "HV60" will lead to, and/or already has led to, the erroneous belief that Defendant Oxygen Frog's products originate with or are sponsored by Plaintiff, enabling Defendant Oxygen Frog to misappropriate and unfairly trade upon Plaintiff's valuable goodwill and reputation in the mark of "HV60" and subjecting Plaintiff to the hazards and perils attendant upon Defendant Oxygen Frog's business activities over which Plaintiff has no control.  Such use by Defendant Oxygen Frog is in violation of Plaintiff's rights under the common law of trademark and unfair competition.

670.    Defendant Oxygen Frog's acts, as stated above, constitute infringement of the common law rights of Plaintiff and to the above stated "HV60" mark.  Defendant Oxygen Frog's infringement of Plaintiff's common law rights have diminished and devalued the worth of Plaintiff's "HV60" mark and continuing infringement by Defendant Oxygen Frog in the future, will tend to cause further diminishment and devaluation of the worth of the "HV60" trademark.

671.    As a direct and proximate result of Defendant Oxygen Frog's actions, Plaintiff has sustained Injuries and will continue to sustain Injuries.

672.   As a further direct and proximate result of Defendant Oxygen Frog's wrongful acts, one or more of the Defendants have unlawfully derived Benefits from one or more of the Defendants' wrongful acts.

673.   Defendant Oxygen Frog's acts of infringement set forth in this claim leave Plaintiff with no adequate remedy at law and have caused and will continue to cause irreparable damages unless enjoined by this Court.

674.   Plaintiff HVLPO2 has sustained Injuries by Defendant Oxygen Frog's common law trademark infringement and unfair competition, and is entitled to recover money damages from Defendant Oxygen Frog, and Plaintiff HVLPO2 will continue to suffer damages in the future that will not be mitigated unless Defendant Oxygen Frog's common law trademark infringement and unfair competition activities are enjoined by this Court.

675.   The great and irreparable harm to Plaintiff HVLPO2 will only be mitigated if a temporary restraining order and/or preliminary injunction, as well as a permanent injunction, are issued enjoining Defendant Oxygen Frog and its respective agents, owners, officers, servants, employees, representatives, affiliates, and all others acting in active concert therewith from infringing Plaintiff's mark of "HV60" and/or unfairly competing.

676.   Unless a temporary restraining order and/or preliminary injunction is ordered, Plaintiff will suffer irreparable harm.

677.   There is a substantial likelihood that Plaintiff will prevail on the merits of its claim for relief.

678.    The threatened injury to Plaintiff outweighs any threatened harm a temporary restraining order and/or injunction may cause the Defendants.

679.    Plaintiff has no adequate remedy at law or otherwise for the harm and damage being done.

680.    Such injunctive relief will serve the public interest.

## COUNT XXXIV

## ENGAGING IN DECEPTIVE AND UNFAIR TRADE PRACTICES UNDER FLORIDA'S DECEPTIVE AND UNFAIR TRADE PRACTICES ACT, FLA. STAT. §§ 501.201 ET SEQ., AGAINST DEFENDANT OXYGEN FROG

681.    Plaintiff HVLPO2 re-alleges and incorporates by reference the allegations set forth in Paragraphs 1 through 680, above, as if fully set forth herein.

682.    On information and belief, Defendant Oxygen Frog's acts, as pleaded above, constitute violations of the Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. §§ 501-201 *et seq.*

683.    On information and belief, Defendant Oxygen Frog has, in the course of Defendant Oxygen Frog's business, vocation, or occupation, passed off goods or services as those of Plaintiff.

684.    On information and belief, Defendant Oxygen Frog has, in the course of Defendant Oxygen Frog's business, vocation, or occupation, caused likelihood of confusion or of misunderstanding as to the source, sponsorship, approval, or certification of goods or services.

685.    On information and belief, Defendant Oxygen Frog has, in the course of Defendant Oxygen Frog's business, vocation, or occupation, caused likelihood of

confusion or of misunderstanding as to affiliation, connection, or association with, or certification by, Plaintiff.

686.   On information and belief, Defendant Oxygen Frog has, in the course of Defendant Oxygen Frog's business, vocation, or occupation, represented that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have or that Defendant Oxygen Frog has a sponsorship, approval, status, affiliation, or connection that Defendant Oxygen Frog does not have.

687.   On information and belief, Defendant Oxygen Frog has, in the course of Defendant Oxygen Frog's business, vocation, or occupation, represented that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another.

688.   On information and belief, Defendant Oxygen Frog willfully engaged in such trade practice(s) knowing it or them to be deceptive and/or unfair.

689.   On information and belief, Defendant Oxygen Frog has conducted "[u]nfair methods of competition, unconscionable acts or practices," and/or "unfair or deceptive acts or practices in the conduct of [Defendant Oxygen Frog's] trade or commerce".  *See* Fla. Stat. § 501.204.

690.   On information and belief, Defendant Oxygen Frog has violated Fla. Stat. §§ 501.201 *et seq.*, including but not limited to Fla. Stat. § 501.204.

691.   As a direct and proximate result of Defendant Oxygen Frog's actions, Plaintiff has sustained Injuries and will continue to sustain Injuries.

692.   As a further direct and proximate result of Defendant Oxygen Frog's wrongful acts, one or more of the Defendants have unlawfully derived Benefits from one or more of the Defendants' wrongful acts.

693.   Defendant Oxygen Frog's acts of deceptive and/or unfair trade practices set forth in this claim leave Plaintiff with no adequate remedy at law and have caused and will continue to cause irreparable damages unless enjoined by this Court.

694.   Plaintiff HVLPO2 has sustained Injuries by Defendant Oxygen Frog's deceptive and/or unfair trade practices, and is entitled to recover money damages from Defendant Oxygen Frog, and Plaintiff HVLPO2 will continue to suffer damages in the future that will not be mitigated unless Defendant Oxygen Frog's deceptive and/or unfair trade practices are enjoined by this Court.

695.   The great and irreparable harm to Plaintiff HVLPO2 will only be mitigated if a temporary restraining order and/or preliminary injunction, as well as a permanent injunction, are issued enjoining Defendant Oxygen Frog and its respective agents, owners, officers, servants, employees, representatives, affiliates, and all others acting in active concert therewith from committing deceptive and/or unfair trade practices.

696.   Unless a temporary restraining order and/or preliminary injunction is ordered, Plaintiff will suffer irreparable harm.

697.   There is a substantial likelihood that Plaintiff will prevail on the merits of its claim for relief.

698.   The threatened injury to Plaintiff outweighs any threatened harm a temporary restraining order and/or injunction may cause the Defendants.

699.    Plaintiff has no adequate remedy at law or otherwise for the harm and damage being done.

700.    Such injunctive relief will serve the public interest.

### COUNT XXXV

### COMMON LAW TRADEMARK INFRINGEMENT OF "HV60" AND UNFAIR COMPETITION AGAINST DEFENDANT FLEISCHMAN

701.    Plaintiff HVLPO2 re-alleges and incorporates by reference the allegations set forth in Paragraphs 1 through 700, above, as if fully set forth herein.

702.    Plaintiff owns and has continuously used the common law mark of "HV60" since at least May of 2012.

703.    On information and belief, Defendant Fleischman's use of the mark of "HV60" will lead to, and/or already has led to, the erroneous belief that one or more of the Defendant's products originate with or are sponsored by Plaintiff, enabling Defendant Fleischman to misappropriate and unfairly trade upon Plaintiff's valuable goodwill and reputation in the mark of "HV60" and subjecting Plaintiff to the hazards and perils attendant upon one or more of the Defendants' business activities over which Plaintiff has no control.  Such use by Defendant Fleischman is in violation of Plaintiff's rights under the common law of trademark and unfair competition.

704.    Defendant Fleischman's acts, as stated above, constitute infringement of the common law rights of Plaintiff and to the above stated "HV60" mark.  Defendant Fleischman's infringement of Plaintiff's common law rights have diminished and devalued the worth of Plaintiff's "HV60" mark and continuing infringement by Defendant Fleischman in the future, will tend to cause further diminishment and devaluation of the worth of the "HV60" trademark.

705.   As a direct and proximate result of Defendant Fleischman's actions, Plaintiff has sustained Injuries and will continue to sustain Injuries.

706.   As a further direct and proximate result of Defendant Fleischman's wrongful acts, one or more of the Defendants have unlawfully derived Benefits from one or more of the Defendants' wrongful acts.

707.   Defendant Fleischman's acts of infringement set forth in this claim leave Plaintiff with no adequate remedy at law and have caused and will continue to cause irreparable damages unless enjoined by this Court.

708.   Plaintiff HVLPO2 has sustained Injuries by Defendant Fleischman's common law trademark infringement and unfair competition, and is entitled to recover money damages from Defendant Fleischman, and Plaintiff HVLPO2 will continue to suffer damages in the future that will not be mitigated unless Defendant Fleischman's common law trademark infringement and unfair competition activities are enjoined by this Court.

709.   The great and irreparable harm to Plaintiff HVLPO2 will only be mitigated if a temporary restraining order and/or preliminary injunction, as well as a permanent injunction, are issued enjoining Defendant Fleischman and his respective agents, owners, officers, servants, employees, representatives, affiliates, and all others acting in active concert therewith from infringing Plaintiff's mark of "HV60" and/or unfairly competing.

710.   Unless a temporary restraining order and/or preliminary injunction is ordered, Plaintiff will suffer irreparable harm.

711.    There is a substantial likelihood that Plaintiff will prevail on the merits of its claim for relief.

712.    The threatened injury to Plaintiff outweighs any threatened harm a temporary restraining order and/or injunction may cause the Defendants.

713.    Plaintiff has no adequate remedy at law or otherwise for the harm and damage being done.

714.    Such injunctive relief will serve the public interest.

## COUNT XXXVI

## ENGAGING IN DECEPTIVE AND UNFAIR TRADE PRACTICES UNDER FLORIDA'S DECEPTIVE AND UNFAIR TRADE PRACTICES ACT, FLA. STAT. §§ 501.201 ET SEQ., AGAINST DEFENDANT FLEISCHMAN

715.    Plaintiff HVLPO2 re-alleges and incorporates by reference the allegations set forth in Paragraphs 1 through 714, above, as if fully set forth herein.

716.    On information and belief, Defendant Oxygen Frog's acts, as pleaded above, constitute violations of the Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. §§ 501-201 *et seq.*

717.    On information and belief, Defendant Fleischman has, in the course of Defendant Fleischman's business, vocation, or occupation, passed off goods or services as those of Plaintiff.

718.    On information and belief, Defendant Fleischman has, in the course of Defendant Fleischman's business, vocation, or occupation, caused likelihood of confusion or of misunderstanding as to the source, sponsorship, approval, or certification of goods or services.

719.   On information and belief, Defendant Fleischman has, in the course of Defendant Fleischman's business, vocation, or occupation, caused likelihood of confusion or of misunderstanding as to affiliation, connection, or association with, or certification by, Plaintiff.

720.   On information and belief, Defendant Fleischman has, in the course of Defendant Fleischman's business, vocation, or occupation, represented that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have or that Defendant Fleischman has a sponsorship, approval, status, affiliation, or connection that Defendant Fleischman does not have.

721.   On information and belief, Defendant Fleischman has, in the course of Defendant Fleischman's business, vocation, or occupation, represented that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another.

722.   On information and belief, Defendant Fleischman willfully engaged in such trade practice(s) knowing it or them to be deceptive and/or unfair.

723.   On information and belief, Defendant Fleischman has conducted "[u]nfair methods of competition, unconscionable acts or practices," and/or "unfair or deceptive acts or practices in the conduct of [Defendant Fleischman's] trade or commerce".  *See* Fla. Stat. § 501.204.

724.   On information and belief, Defendant Fleischman has violated Fla. Stat. §§ 501.201 *et seq.*, including but not limited to Fla. Stat. § 501.204.

725.   As a direct and proximate result of Defendant Fleischman's actions, Plaintiff has sustained Injuries and will continue to sustain Injuries.

726.   As a further direct and proximate result of Defendant Fleischman's wrongful acts, one or more of the Defendants have unlawfully derived Benefits from one or more of the Defendants' wrongful acts.

727.   Defendant Fleischman's acts of deceptive and/or unfair trade practices set forth in this claim leave Plaintiff with no adequate remedy at law and have caused and will continue to cause irreparable damages unless enjoined by this Court.

728.   Plaintiff HVLPO2 has sustained Injuries by Defendant Fleischman's deceptive and/or unfair trade practices, and is entitled to recover money damages from Defendant Fleischman, and Plaintiff HVLPO2 will continue to suffer damages in the future that will not be mitigated unless Defendant Fleischman's deceptive and/or unfair trade practices are enjoined by this Court.

729.   The great and irreparable harm to Plaintiff HVLPO2 will only be mitigated if a temporary restraining order and/or preliminary injunction, as well as a permanent injunction, are issued enjoining Defendant Fleischman and his respective agents, owners, officers, servants, employees, representatives, affiliates, and all others acting in active concert therewith from committing deceptive and/or unfair trade practices.

730.   Unless a temporary restraining order and/or preliminary injunction is ordered, Plaintiff will suffer irreparable harm.

731.   There is a substantial likelihood that Plaintiff will prevail on the merits of its claim for relief.

732.   The threatened injury to Plaintiff outweighs any threatened harm a temporary restraining order and/or injunction may cause the Defendants.

733.   Plaintiff has no adequate remedy at law or otherwise for the harm and damage being done.

734.   Such injunctive relief will serve the public interest.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff HVLPO2 respectfully requests judgment in its favor and against Defendants, as follows:

a.     A judgment in favor of Plaintiff HVLPO2 that Defendant Oxygen Frog has infringed the '840 Patent;

b.     A judgment in favor of Plaintiff HVLPO2 that Defendant Oxygen Frog has infringed the '941 Patent;

c.     A judgment in favor of Plaintiff HVLPO2 that Defendant Oxygen Frog has infringed the '434 Patent;

d.     A judgment in favor of Plaintiff HVLPO2 that Defendant Fleischman has infringed the '840 Patent;

e.     A judgment in favor of Plaintiff HVLPO2 that Defendant Fleischman has infringed the '941 Patent;

f.     A judgment in favor of Plaintiff HVLPO2 that Defendant Fleischman has infringed the '434 Patent;

g.     A temporary restraining order and/or preliminary injunction, as well as a permanent injunction, against Defendant Oxygen Frog and its respective officers, owners, directors, agents, servants, affiliates, employees, divisions, branches, subsidiaries, parents, and all others acting in active concert therewith from infringing the '840 Patent;

h.      A temporary restraining order and/or preliminary injunction, as well as a permanent injunction, against Defendant Oxygen Frog and its respective officers, owners, directors, agents, servants, affiliates, employees, divisions, branches, subsidiaries, parents, and all others acting in active concert therewith from infringing the '941 Patent;

i.      A temporary restraining order and/or preliminary injunction, as well as a permanent injunction, against Defendant Oxygen Frog and its respective officers, owners, directors, agents, servants, affiliates, employees, divisions, branches, subsidiaries, parents, and all others acting in active concert therewith from infringing the '434 Patent;

j.      A temporary restraining order and/or preliminary injunction, as well as a permanent injunction, against Defendant Fleischman and his respective agents, servants, affiliates, employees, and all others acting in active concert therewith from infringing the '840 Patent;

k.      A temporary restraining order and/or preliminary injunction, as well as a permanent injunction, against Defendant Fleischman and his respective agents, servants, affiliates, employees, and all others acting in active concert therewith from infringing the '941 Patent;

l.      A temporary restraining order and/or preliminary injunction, as well as a permanent injunction, against Defendant Fleischman and his respective agents, servants, affiliates, employees, and all others acting in active concert therewith from infringing the '434 Patent;

m.      A judgment and order requiring Defendant Oxygen Frog to pay Plaintiff HVLPO2 its damages, costs, expenses, and pre- and post-judgment interest for its infringement of the '840 Patent as provided under 35 U.S.C. § 284, and treble damages if any of the infringement is determined to be willful;

n.      A judgment and order requiring Defendant Oxygen Frog to pay Plaintiff HVLPO2 its damages, costs, expenses, and pre- and post-judgment interest for its infringement of the '941 Patent as provided under 35 U.S.C. § 284, and treble damages if any of the infringement is determined to be willful;

o.      A judgment and order requiring Defendant Oxygen Frog to pay Plaintiff HVLPO2 its damages, costs, expenses, and pre- and post-judgment interest for its infringement of the '434 Patent as provided under 35 U.S.C. § 284, and treble damages if any of the infringement is determined to be willful;

p.      A judgment and order finding that this is an exceptional case within the meaning of 35 U.S.C. § 285 and awarding to Plaintiff HVLPO2 its reasonable attorneys' fees to be paid by Defendant Oxygen Frog;

q.      A judgment and order requiring Defendant Fleischman to pay Plaintiff HVLPO2 its damages, costs, expenses, and pre- and post-judgment interest for his infringement of the '840 Patent as provided under 35 U.S.C. § 284, and treble damages if any of the infringement is determined to be willful;

r.      A judgment and order requiring Defendant Fleischman to pay Plaintiff HVLPO2 its damages, costs, expenses, and pre- and post-judgment interest for his infringement of the '941 Patent as provided under 35 U.S.C. § 284, and treble damages if any of the infringement is determined to be willful;

s.      A judgment and order requiring Defendant Fleischman to pay Plaintiff HVLPO2 its damages, costs, expenses, and pre- and post-judgment interest for his infringement of the '434 Patent as provided under 35 U.S.C. § 284, and treble damages if any of the infringement is determined to be willful;

t.      A judgment and order finding that this is an exceptional case within the meaning of 35 U.S.C. § 285 and awarding to Plaintiff HVLPO2 its reasonable attorneys' fees to be paid by Defendant Fleischman;

u.      A judgment in favor of Plaintiff HVLPO2 that Defendant Oxygen Frog has defamed Plaintiff HVLPO2;

v.      A temporary restraining order and/or preliminary injunction, as well as a permanent injunction, against Defendant Oxygen Frog and its respective officers, owners, directors, agents, servants, affiliates, employees, divisions, branches, subsidiaries, parents, and all others acting in active concert therewith from defaming Plaintiff HVLPO2;

w.      A judgment and order requiring Defendant Oxygen Frog to pay Plaintiff HVLPO2 its damages, costs, expenses, and pre- and post-judgment interest for its defamation of Plaintiff HVLPO2;

x.      A judgment in favor of Plaintiff HVLPO2 that Defendant Fleischman has defamed Plaintiff HVLPO2;

y.      A temporary restraining order and/or preliminary injunction, as well as a permanent injunction, against Defendant Fleischman and his respective agents, servants, affiliates, employees, and all others acting in active concert therewith from defaming Plaintiff HVLPO2;

z.      A judgment and order requiring Defendant Fleischman to pay Plaintiff HVLPO2 its damages, costs, expenses, and pre- and post-judgment interest for his defamation of Plaintiff HVLPO2;

aa.     A judgment in favor of Plaintiff HVLPO2 that Defendant Oxygen Frog has commercially disparaged Plaintiff HVLPO2 and/or HVLPO2's property;

bb.     A temporary restraining order and/or preliminary injunction, as well as a permanent injunction, against Defendant Oxygen Frog and its respective officers, owners, directors, agents, servants, affiliates, employees, divisions, branches, subsidiaries, parents, and all others acting in active concert therewith from commercially disparaging Plaintiff HVLPO2;

cc.     A judgment and order requiring Defendant Oxygen Frog to pay Plaintiff HVLPO2 its damages, costs, expenses, and pre- and post-judgment interest for its commercial disparagement of Plaintiff HVLPO2;

dd.     A judgment in favor of Plaintiff HVLPO2 that Defendant Fleischman has commercially disparaged Plaintiff HVLPO2 and/ or HVLPO2's property;

ee.     A temporary restraining order and/or preliminary injunction, as well as a permanent injunction, against Defendant Fleischman and his respective agents, servants, affiliates, employees, and all others acting in active concert therewith from commercially disparaging Plaintiff HVLPO2;

ff.     A judgment and order requiring Defendant Fleischman to pay Plaintiff HVLPO2 its damages, costs, expenses, and pre- and post-judgment interest for his commercial disparagement of Plaintiff HVLPO2;

gg. A judgment in favor of Plaintiff HVLPO2 that Defendant Oxygen Frog has engaged in deceptive and/or unfair trade practices by disparaging goods, services, or business of Plaintiff HVLPO2 under Fla. Stat. § 501.201 *et seq.*;

hh.    A temporary restraining order and/or preliminary injunction, as well as a permanent injunction, against Defendant Oxygen Frog and its respective officers, owners, directors, agents, servants, affiliates, employees, divisions, branches, subsidiaries, parents, and all others acting in active concert therewith from engaging in deceptive and/or unfair trade practices of disparaging goods, services, or business of Plaintiff HVLPO2;

ii.    A judgment and order requiring Defendant Oxygen Frog to pay Plaintiff HVLPO2 its damages, attorney's fees, costs, and expenses for its deceptive and/or unfair trade practices as provided for by Fla. Stat. § 501.211 and pre- and post-judgment interest as provided by one or more applicable statutes;

jj.    A judgment in favor of Plaintiff HVLPO2 that Defendant Fleischman has engaged in deceptive and/or unfair trade practices by disparaging goods, services, or business of Plaintiff HVLPO2 under Fla. Stat. §§ 501.201 *et seq.*;

kk.    A temporary restraining order and/or preliminary injunction, as well as a permanent injunction, against Defendant Fleischman and his respective officers, agents, servants, affiliates, employees, and all others acting in active concert therewith from engaging in deceptive and/or unfair trade practices of disparaging goods, services, or business of Plaintiff HVLPO2;

ll.    A judgment and order requiring Defendant Fleischman to pay Plaintiff HVLPO2 its damages, attorney's fees, costs, and expenses for its deceptive and/or

unfair trade practices as provided for by Fla. Stat. § 501.211 and pre- and post-judgment interest as provided by one or more applicable statutes;

mm.    A judgment in favor of Plaintiff HVLPO2 that Defendant Oxygen Frog has infringed Plaintiff HVLPO2's trademark of "HV60";

nn.    A temporary restraining order and/or preliminary injunction, as well as a permanent injunction, against Defendant Oxygen Frog and its respective officers, owners, directors, agents, servants, affiliates, employees, divisions, branches, subsidiaries, parents, and all others acting in active concert therewith from infringing Plaintiff HLVPO2's trademark;

oo.    A judgment and order requiring Defendant Oxygen Frog to pay Plaintiff HVLPO2 its damages, costs, expenses, and pre- and post-judgment interest for its trademark infringement of Plaintiff HVLPO2's trademark;

pp.    A judgment in favor of Plaintiff HVLPO2 that Defendant Oxygen Frog has engaged in deceptive and/or unfair trade practices through Defendant Oxygen Frog's use of "HV60" under Fla. Stat. §§ 501.201 *et seq.*;

qq.    A temporary restraining order and/or preliminary injunction, as well as a permanent injunction, against Defendant Oxygen Frog and its respective officers, owners, directors, agents, servants, affiliates, employees, divisions, branches, subsidiaries, parents, and all others acting in active concert therewith from engaging in deceptive and/or unfair trade practices;

rr.    A judgment and order requiring Defendant Oxygen Frog to pay Plaintiff HVLPO2 its damages, attorney's fees, costs, and expenses for its deceptive and/or

unfair trade practices as provided for by Fla. Stat. § 501.211 and pre- and post-judgment interest as provided by one or more applicable statutes;

ss.     A judgment in favor of Plaintiff HVLPO2 that Defendant Fleischman has infringed Plaintiff HVLPO2's trademark of "HV60";

tt. A temporary restraining order and/or preliminary injunction, as well as a permanent injunction, against Defendant Fleischman and his respective officers, owners, directors, agents, servants, affiliates, employees, divisions, branches, subsidiaries, parents, and all others acting in active concert therewith from infringing Plaintiff HLVPO2's trademark;

uu.     A judgment and order requiring Defendant Fleischman to pay Plaintiff HVLPO2 its damages, costs, expenses, and pre- and post-judgment interest for his trademark infringement of Plaintiff HVLPO2's trademark;

vv.     A judgment in favor of Plaintiff HVLPO2 that Defendant Fleischman has engaged in deceptive and/or unfair trade practices through Defendant Oxygen Frog's use of "HV60" under Fla. Stat. §§ 501.201 *et seq.*;

ww.     A temporary restraining order and/or preliminary injunction, as well as a permanent injunction, against Defendant Fleischman and his respective officers, owners, directors, agents, servants, affiliates, employees, divisions, branches, subsidiaries, parents, and all others acting in active concert therewith from engaging in deceptive and/or unfair trade practices;

xx.     A judgment and order requiring Defendant Fleischman to pay Plaintiff HVLPO2 its damages, attorney's fees, costs, and expenses for his deceptive and/or

unfair trade practices as provided for by Fla. Stat. § 501.211 and pre- and post-judgment interest as provided by one or more applicable statutes; and

yy.     Such other relief in law and equity as this Court may deem just and proper.

## DEMAND FOR A JURY TRIAL

Plaintiff HVLPO2 demands a trial by jury of all issues so triable.

DATED this <u>10th</u> day of June, 2016.

Respectfully submitted,

AUSLEY & McMULLEN, P.A.

/s/Martin B. Sipple
  Martin B. Sipple
  Fla. Bar No. 0135399
  123 South Calhoun Street
  P.O. Box 391 (zip 32302)
  Tallahassee, Florida 32301
  (850) 224-9115 – telephone
  (850) 222-7560 – facsimile
  msipple@ausley.com

and

SUITER SWANTZ, PC LLO
  Nicholas R. Grennan (NE Bar #23928)
  (moving for *pro hac vice* admission)
  14301 FNB Pkwy, #220
  Omaha, Nebraska 68154
  (402) 496-0300 – telephone
  nrg@suiter.com