# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF FLORIDA
### TALLAHASSEE DIVISION

**HVLPO2, LLC,**

    *Plaintiff*,

v.                                      Case No. 4:16cv336-MW/CAS

**OXYGEN FROG, LLC, and
SCOTT D. FLEISCHMAN,**

    *Defendants.*

_____/

## ORDER ON MOTION IN LIMINE

Plaintiff moves in limine to exclude certain matters from trial. ECF No. 119. For the reasons that follow, Plaintiff's motion is **GRANTED in part** and **DENIED in part**.

I.

Plaintiff first moves to exclude "[a]ny evidence or argument that the patents-in-suit are invalid in view of the so-called 'Low Tide' reference." *Id.* at 2–8. The Low Tide reference is a YouTube video uploaded on September 1, 2010. *See* ECF No. 119, at 3. Plaintiff offers two reasons for exclusion: "(a) the [Low Tide] reference is not described in a publicly accessible printed publication and therefore cannot be used to prove unpatentability;

1

and (b) the [Low Tide] reference does not anticipate the patents-in-suit in any event." *Id.* at 3.

As to Plaintiff's first reason, this Court holds that a reasonable jury could find that the Low Tide reference is "described in a printed publication" within the meaning of 35 U.S.C. § 102(a).[1] Although the Federal Circuit has not explicitly ruled that YouTube videos qualify, "the statutory phrase 'printed publication' has been interpreted to give effect to ongoing advances in the technologies of data storage, retrieval, and dissemination." *In re Hall*, 781 F.2d 897, 898 (Fed. Cir. 1986). Accordingly, courts have held that videos meet the definition.[2] Similarly, the United States Patent Office's Manual of Patent Examining Procedure ("MPEP") states that "digital video . . . is considered to be a 'printed publication' within the meaning of . . . pre-AIA 35 U.S.C. 102(a)

---

[1] Only four patent claims are at issue. *See* ECF No. 111; ECF No. 113. Both sides admit that the priority date for those claims is January 4, 2012. ECF No. 122, at 16. Consequently, this Court must apply the pre-AIA version of § 102. *See In re Nuvasive, Inc.*, 842 F.3d 1376, 1380 n.3 (Fed. Cir. 2016) ("Congress amended § 102 when it enacted the AIA. However, because the application that led to the '156 patent was filed before March 16, 2013, the pre-AIA § 102 applies." (citation omitted)).

[2] *See Kimberly-Clark Worldwide, Inc. v. First Quality Baby Prods., LLC*, No. 09-C-0916, 2012 WL 5930609, at *6–7 (E.D. Wis. Nov. 27, 2012); *Apple, Inc. v. Samsung Elecs. Co.*, 877 F. Supp. 2d 838, 885 (N.D. Cal. 2012), *rev'd on other grounds*, 695 F.3d 1370 (Fed. Cir. 2012); *but see Diomed, Inc. v. AngioDynamics, Inc.,* 450 F. Supp. 2d 130, 141–42 (D. Mass 2006).

and (b) provided the publication was accessible to persons concerned with the art to which the document relates." MPEP § 2128(II)(A) (9th ed., last revised Jan. 2018).

Indeed, Plaintiff does not seem to have any qualms about the fact that the Low Tide reference is a YouTube video as opposed to a journal article. *See* ECF No. 119, at 3–7. Instead, Plaintiff merely argues that Defendants haven't proven the Low Tide reference to be sufficiently accessible to the public interested in the art. *See id.* Specifically, Plaintiff cites various cases for the proposition that "when internet references are obscure or difficult to access they generally are not considered to be publicly accessible." *Id.* at 4–6. Plaintiff then notes that the Low Tide reference was uploaded on a channel which "was not associated with a trade group or website well-known to the relevant community" and which no person would have a reason to search for. *See id.* at 6.

It appears that Plaintiff is unfamiliar with how YouTube works. A familiar user would know that you don't need to search for a particular channel to watch the videos uploaded on it. For example, if you want to watch a video of a cat skateboarding, you can search "cat skateboarding"; you don't need to know that it

3

might have been "CatLady83" who uploaded the video you end up watching.[3]

Accordingly, if someone wanted to find the Low Tide reference they wouldn't need to know it was uploaded by Tyler Piebes—all they'd need to do is search "oxygen concentrator system" (which happens to be the title of the video). Today,[4] such a search produces a list of only "[a]bout 5,330 results."[5] The Low Tide reference appears twenty first from the top of the list. *Supra* n.5. Surely, the effort involved in composing a basic search query and scrolling down the page a few times does not exceed the "reasonable diligence" that the law expects of a hypothetical prior-art subject. *Cf. Blue Calypso, LLC v. Groupon, Inc.*, 815 F.3d 1331, 1348 (Fed. Cir. 2016) ("A reference will be considered publicly

---

[3] For those who are curious, a search for "cat skateboarding" returns several videos of cats riding skateboards.

[4] Of course, the question is not whether the Low Tide reference is publicly accessible *today* but rather whether it was accessible at the time of the invention (i.e., on January 24, 2012). This Court has no way of knowing *exactly* what a YouTube search would have produced on January 24, 2012. Indeed, the data has changed (i.e., videos have come and gone) and presumably the search algorithms have changed too. Nevertheless, it is not unreasonable to assume that a present-day search is somewhat reflective of what a search would have produced in in the past, at least in this context. If anything, one could reasonably expect a search in 2012 to have produced *less* results, thereby making the Low Tide reference more prominent.

[5] Search for "oxygen concentrator system", YouTube (May 27, 2018), http://www.youtube.com/results?search_query=oxygen+concentrator+system.

accessible if it was 'disseminated or otherwise made available to the extent that persons interested and ordinarily skilled in the subject matter or art exercising reasonable diligence, can locate it."). In sum, this Court concludes that a reasonable jury could find that someone interested and ordinarily skilled in the pertinent art, exercising reasonable diligence, would have been able to locate the Low Tide reference on January 4, 2012.

Plaintiff's second point also raises a jury question. It doesn't matter that Plaintiff thinks the Low Tide reference doesn't anticipate the patent claims. If Plaintiff wanted this Court to rule on that issue it should have moved for summary judgment. Plaintiff didn't, so now the question goes to the jury. *Cf. Minn. Mining & Mfg. Co. v. Chemque, Inc.*, 303 F.3d 1294, 1301 (Fed. Cir. 2002) ("Anticipation is a question of fact . . . .").

## II.

Plaintiff next moves to exclude "[a]ny evidence or argument that the patents-in-suit are rendered obvious by combining the 'Cornette' and 'Low Tide' references." ECF No. 119, at 9. Plaintiff argues that, "[a]side from the inadmissibility of the Low Tide reference, the Court should not allow evidence or argument in support on this issue because defendants have failed to adequately

5

disclose their obviousness contention, as required by law and local rule." *Id.*

Plaintiff is correct that the applicable local rules[6] require a defendant to submit invalidity contentions. *See* Patent L.R. 4.3. However, Plaintiff is incorrect that Defendants have not complied with that requirement. Indeed, Defendants disclosed the Cornette and Low Tide references and stated that, combined together, the two references render the patent claims obvious. ECF No. 119-1. Moreover, although it was not done in the most lapidary fashion, Defendants *did* explain why someone might think to combine the teachings of both references. *See id.* at 8 ("[T]he feature of requiring different components on different circuits for power balance reasons, besides being disclosed herein, is inherent because overloading a circuit would render such a device inoperable. Those skilled in the art (and even those that are not) surely know not to overload circuits. Likewise, to the extent controlling and managing means turning various components on or off, it is a well established practice to put a pressure sensor on

---

[6] The Northern District of Georgia Local Patent Rules (cited as "Patent L.R. __") apply in a patent case before this Court unless otherwise ordered. N.D. Fla. Loc. R. 88.3.

6

a storage tank and shutoff the incoming oxygen when the tank is full or reaches a preset value."). Accordingly, Defendants did all that was required of them under local rule. *See* Patent L.R. 4.3. Moreover, contrary to Plaintiff's assertions otherwise, Defendants' proffered reason for combining the references is legally sound. *Cf., e.g., KSR Int'l Co. v. Teleflex Inc.*, 550 U.S. 398, 421 (2007) ("When there is a design need or market pressure to solve a problem and there are a finite number of identified, predictable solutions, a person of ordinary skill has good reason to pursue the known options within his or her technical grasp. If this leads to the anticipated success, it is likely the product not of innovation but of ordinary skill and common sense. In that instance the fact that a combination was obvious to try might show that it was obvious under § 103."). Accordingly, Plaintiff has failed to show that exclusion is proper.

## III.

Plaintiff next moves to exclude "any 'opinion' testimony by Scott Fleischman as to any issue not disclosed in Mr. Fleischman's rebuttal expert report or in defendants' invalidity contentions." ECF No. 119, at 14–17. Plaintiff notes, for instance, that Defendants' answer includes § 112 defenses that are not raised in

7

Defendants' invalidity contentions or Mr. Fleischman's expert report. *Id.* at 15. According to Plaintiff, "[a]llowing defendants to introduce evidence or argument regarding invalidity theories not disclosed in their invalidity contentions defeats the purpose of having [local patent rules]." *Id.* at 16.

Defendants respond that Mr. Fleischman "should be given wide latitude" because "he is being accus[ed] of willfully infringing the patents-in-suit, an element of which is state of mind." ECF No. 125, at 8. They note that "[o]ne ground for his defense on the claim of willful infringement is he does not subjectively believe the patents are valid[,] and his good faith belief of invalidity is a defense." *Id.* (citing *Halo Elecs., Inc. v. Pulse Elecs., Inc.*, 136 S. Ct. 1923, 1932 (2016)).

This Court agrees that Mr. Fleischman may not offer legal conclusions from the witness stand (regardless of whether those conclusions have been disclosed). "While it is well established that a qualified expert in a civil case may offer his opinion on an 'ultimate issue' in a case, experts 'may not testify to the legal implications of conduct' or 'tell the jury what result to reach.'" *Commodores Entm't Corp. v. McClary*, 879 F.3d 1114, 1128 (11th Cir. 2018) (citations omitted). However, this Court also agrees that

8

Mr. Fleischman may testify about why he thought he wasn't infringing Plaintiff's patents. Indeed, by alleging that Mr. Fleischman has willfully infringed the patents, Plaintiff put Mr. Fleischman's subjective belief at issue. *See Wechsler v. Macke Int'l Trade, Inc.*, 486 F.3d 1286, 1292 (Fed. Cir. 2007) ("A primary consideration for willful infringement . . . is whether the infringer had a good faith belief that the patent was invalid and/or not infringed."). Accordingly, this Court will permit Mr. Fleischman to explain why believed he was not infringing Plaintiff's patents. However, Mr. Fleischman will not be permitted to couch his testimony in the form of legal conclusions. To the extent he does, Plaintiff may object at trial.

## IV.

Plaintiff next moves to exclude "[a]ny evidence or argument that defendants are not liable for infringement because they are merely 'practicing the prior art.'" ECF No. 119, at 17. Plaintiff claims that "practicing the prior art" is an improper defense and that Defendants have asserted this defense "[t]hroughout this case." *Id.*

Defendants agree that "practicing the prior art" is not a proper defense. *Se* ECF No. 125, at 10 ("It would of course be

inappropriate for an attorney to argue that 'practicing the prior art' alone is a defense."). This Court agrees too. "It is well established . . . that 'practicing the prior art' is not a defense to infringement." *In reOmeprazole Patent Litig.*, 536 F.3d 1361, 1377 (Fed. Cir. 2008).

But Defendants aren't raising a "practicing the prior art" defense. "A 'practicing the prior' defense typically refers to the situation where an accused infringer compares the accused infringing behavior to the prior art in an attempt to prove that its conduct is either noninfringing or that the patent is invalid as anticipated because the accused conduct is simply 'practicing the prior art.'" *Cordance Corp v. Amazon.com. Inc.*, 658 F.3d 1330, 1337 (Fed. Cir. 2011). In other words, the party raising the defense improperly tries to "flout the requirement of proving invalidity by clear and convincing evidence by asserting a 'practicing the prior art' defense to literal infringement under the less stringent preponderance of evidence standard." *See id.* (quoting *Tate Access Floors, Inc. v. Interface Architectural Res., Inc.*, 279 F.3d 1357, 1367 (Fed. Cir. 2002)). Here, this Court has already ruled on infringement, and Defendants have agreed not to challenge that ruling for the time being. *See* ECF No. 11.

What Defendants *are* trying to do is allow Mr. Fleischman to use "words of his own choice to explain his own allegedly tortuous [sic] conduct." ECF No. 125, at 10. Defendants explain that "Mr. Fleischman, a non-attorney, frequently characterizes his conduct as practicing the prior art because that is how he thinks about it." *Id.* Defendants argue that "[s]uch testimony is helpful to understand Mr. Fleishman's [sic] state of mind, to defend against the charge of willful infringement, and to show how obvious the claimed invention is in light of the prior art." *Id.*

Again, this Court will not permit Mr. Fleischman to offer legal conclusions from the witness stand. *See supra* pp. 8–9. Mr. Fleischman will be permitted to use his "own words" to the extent that he is not offering legal conclusions. Plaintiff may object at trial if necessary.

V.

Finally, Plaintiff moves to exclude "[a]ny evidence or argument that [Plaintiff] tortiously interfered with Oxygen Frog's business relationship with ABR Images, Inc., by falsely asserting that ABR was a patent infringer, or by falsely asserting that ABR presently owed [Plaintiff] money." ECF No. 119, at 18–20. Plaintiff acknowledges that this Court already denied its motion to dismiss

11

regarding this issue, but Plaintiff maintains that "based on certain findings in that order, and in subsequent orders issued by the Court in this case, [Defendants] should not be permitted to pursue evidence or argument on two of the three theories underlying [their] tortious interference claim." *Id.* at 18. In Plaintiff's words, this Court "should formalize its prior ruling." *See id.* at 20.

Plaintiff asks too much. This Court's prior ruling was a denial of a motion to dismiss. Although this Court cast shade over some of Defendants' theories of relief, this Court did not "dismiss" those theories because this Court "may not dismiss a *theory* upon which a claim is based." ECF No. 90, at 5 (citing *Winstead v. Lafayette Cty. Bd. of Cty. Comm'rs*, 197 F. Supp. 3d 1334, 1341 (N.D. Fla. 2016)). Plaintiff could have moved for summary judgment on the issue, but Plaintiff didn't. Accordingly, Defendants are entitled to present their theories of relief to the jury (however weak those theories may be).

**SO ORDERED on May 28, 2018.**

                                      s/Mark E. Walker  
                                      **United States District Judge**