# United States Court of Appeals for the Federal Circuit

---

**HVLPO2, LLC,**
*Plaintiff-Appellant*

v.

**OXYGEN FROG, LLC, SCOTT D. FLEISCHMAN,**
*Defendants-Appellees*

---

2019-1649

---

Appeal from the United States District Court for the Northern District of Florida in No. 4:16-cv-00336-MW-CAS, Judge Mark E. Walker.

---

Decided: February 5, 2020

---

MARTIN BRUCE SIPPLE, Ausley McMullen, Tallahassee, FL, argued for plaintiff-appellant. Also represented by ALEXANDRA AKRE; NICHOLAS R. GRENNAN, Suiter Swantz PC LLO, Omaha, NE.

ROBERT HUNTSMAN, Huntsman Law Group, PLLC, Aurora, CO, argued for defendants-appellees.

---

Before NEWMAN, MOORE, and CHEN, *Circuit Judges*.

MOORE, *Circuit Judge*.

HVLPO2, LLC (HVO) sued Oxygen Frog, LLC and its CEO, Scott Fleischman (collectively, Oxygen Frog) in the Northern District of Florida for infringement of the claims of U.S. Patent Nos. 8,876,941 and 9,372,488. A jury concluded that claims 1 and 7 of both the '941 and '488 patents, the only claims tried, would have been obvious under 35 U.S.C. § 103. After the jury verdict, HVO moved for judgment as a matter of law that Oxygen Frog had failed to establish obviousness, or in the alternative, for a new trial based on the admission of lay opinion testimony on the issue of obviousness. The district court denied HVO's motion, and HVO appealed. Because the district court abused its discretion by admitting lay witness testimony regarding obviousness, we reverse and remand for a new trial.

## BACKGROUND

The '941 and '488 patents share a specification and are directed to methods and devices for controlling an oxygen-generating system, which is used to sustain and manage airflow for torch glass artists who use surface mix glass torches. *See* '488 patent at 1:32–33. Claim 1 of the '488 patent is illustrative:

> 1. An apparatus for managing an oxygen generating system, the oxygen generating system configured for supplying a sustained flow of a gaseous mixture comprising mostly oxygen, the apparatus comprising:
>
> > a controller device configured to:
> >
> > > receive a first pressure signal associated with a first pressure;
> > >
> > > determine the first pressure to be less than or equal to a startup threshold pressure, said first

> pressure associated with a gaseous pressure of an oil-less tank;
>
> send a signal to switch a first circuit on, said first circuit for providing electrical power to a bank of at least two oxygen generators;
>
> send a signal to switch a second circuit on, said second circuit for providing electrical power to an oil-less air compressor;
>
> receive a second pressure signal associated with a second pressure;
>
> determine the second pressure to be greater than or equal to a shutoff threshold pressure, said second pressure associated with a gaseous pressure of the oil-less tank;
>
> send a signal to switch the first circuit off; and
>
> send a signal to switch the second circuit off.

The district court granted partial summary judgment, finding Oxygen Frog infringed claims 1 and 7 of both the '941 and '488 patents. The case then proceeded to a jury trial to assess, among other things, validity of those claims.

At trial, Oxygen Frog argued that the claims were obvious in view of a combination of two prior art references: the "Cornette reference," which is a post on a glass blowing internet forum depicting an oxygen system used for glass blowing, and the "Low Tide video," which is a video that was posted online by Tyler Piebes, a glass blowing artist. Mr. Piebes was not qualified as an expert witness, but did provide deposition testimony as a fact witness, most of

which was played at trial before the jury. HVO objected to Mr. Piebes' testimony regarding obviousness as improper expert opinion testimony. J.A. 100–02. The district court recognized that HVO was objecting to Mr. Piebes offering an opinion on obviousness. In fact, the district court quoted one of the questions and answers which was specifically objected to:

> Question: "Did you think that modifying the Cornette system to support two circuits to be obvious?"
>
> Answer:     "Yes, I did."

J.A. 100. The district court overruled the objection, and instead gave the jury a limiting instruction prior to playing Mr. Piebes' deposition testimony. J.A. 102. The district court's limiting instruction instructed the jury that "a witness such as Mr. Piebes certainly can offer his observations and explain to you how a system works and what he thinks would occur to him from his perspective would or would not be obvious." S.A. 818. It further instructed the jury that such testimony is "not the ultimate question" of obviousness and that it was up to the jury to decide obviousness. *Id.* Mr. Piebes' testimony was then played for the jury, including his testimony about what he would have considered obvious. J.A. 704, 708–09.

After trial, the jury entered a verdict that claims 1 and 7 of the '488 and '941 patents would have been obvious to a person of ordinary skill in the art. HVO filed a motion for judgment as a matter of law, or in the alternative, for a new trial, which the district court denied. HVO appeals. We have jurisdiction pursuant to 28 U.S.C. § 1295(a)(1).

## DISCUSSION

We first consider the district court's denial of HVO's motion for a new trial. The denial of a new trial is reviewed under regional circuit law. *Wordtech Sys., Inc. v. Integrated Networks Sols., Inc.*, 609 F.3d 1308, 1312 (Fed. Cir. 2010). In the Eleventh Circuit, a decision on a motion for

a new trial is reviewed for an abuse of discretion. *Williams v. City of Valdosta*, 689 F.2d 964, 974 (11th Cir. 1982).

The district court rejected HVO's argument that a new trial was warranted based on Mr. Piebes' deposition testimony regarding obviousness. The district court held that it was not an error to admit such testimony. J.A. 23. And it determined that Mr. Piebes' testimony did not substantially prejudice HVO, especially in light of its limiting instruction to the jury. *Id.* Under the circumstances here, that determination was plainly wrong; the district court's limiting instruction was insufficient to cure the substantial prejudice caused by Mr. Piebes' testimony. Thus, the district court abused its discretion by denying the motion for a new trial.

Admission of Mr. Piebes' testimony opining that it would be "obvious" to modify a prior art system in a particular way that would match the claimed invention was improper. Federal Rule of Evidence 702 provides that:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; . . .

This precisely describes testimony which would pertain to an obviousness invalidity challenge in a patent trial. It is often helpful to have a technical expert explain for example, the scope of the prior art or motivations for combining various components. Obviousness and each of its underlying components are analyzed from the perspective of a person of skill in the art. *KSR Int'l Co. v. Teleflex Inc.*, 550 U.S. 398, 420 (2007). Issues of infringement and validity "are analyzed in great part from the perspective of a person

Case: 19-1649    Document: 53    Page: 6    Filed: 02/05/2020
Case 4:16-cv-00536-MW-CAS   Document 267   Filed 02/05/20   Page 6 of 9

of ordinary skill in the art," such that a witness who is "not 'qualified as an expert by knowledge, skill, experience, training, or education' in the pertinent art . . . [cannot] 'assist the trier of fact to understand the evidence or to determine a fact in issue.'" *Sundance, Inc. v. DeMonte Fabricating Ltd.*, 550 F.3d 1356, 1361–62 (Fed. Cir. 2008) (quoting Fed. R. Evid. 702). Thus, "it is an abuse of discretion to permit a witness to testify as an expert on the issues of noninfringement or invalidity unless that witness is qualified as an expert in the pertinent art." *Id.* at 1363. The prohibition of unqualified witness testimony extends to the ultimate conclusions of infringement and validity as well as to the underlying technical questions. "[A] witness not qualified in the pertinent art [may not] testify as an expert on obviousness, or any of the underlying technical questions, such as the nature of the claimed invention, the scope and content of the prior art, the differences between the claimed invention and the prior art, or the motivation of one of ordinary skill in the art to combine these references to achieve the claimed invention." *Id.* at 1364 (footnote omitted).

The Federal Rules of Evidence and those of Civil Procedure carefully govern expert testimony. Federal Rule of Civil Procedure 26 requires for example that experts be disclosed to the opposing party along with a written report which contains all opinions of the expert, the reasons and bases for those opinions, and all facts relied upon in the formation of the opinion. Fed. R. Civ. P. 26(a)(2). HVO was not provided with any such disclosure of Mr. Piebes. Oxygen Frog argues that it did not have to comply with the Rules regarding experts because Mr. Piebes was not proffered as an expert. Oxygen Frog argues that Mr. Piebes' testimony was lay testimony regarding Mr. Piebes' perception and experience. According to Oxygen Frog a lay witness should be permitted to testify that modifying one of the prior art references to include additional claimed features would have been obvious. We do not agree, because

Mr. Piebes' opinion testimony was directed to the central legal and technical question at trial: whether HVO's asserted patent claims were invalid for obviousness. This testimony from Mr. Piebes is thus in the clear purview of experts and lay witness testimony on such issues does not comply with the Federal Rules of Evidence or Civil Procedure.

Mr. Piebes' testimony, which is directed to the conclusion of obviousness and its underlying technical questions, is the province of qualified experts, not lay witnesses. *See, e.g.*, J.A. 704 ("Q. Did you think that modifying the Cornette system to support two circuits to be obvious? A. Yes, I did."); J.A. 708 ("Q. So would you consider it obvious if you have a pressure switch with instructions, a two pole pressure switch with instructions to wire it to turn on and off two circuits? A. Yes."). Mr. Piebes' testimony was therefore inadmissible.

Oxygen Frog also argues that, to the extent admitting Mr. Piebes' testimony was improper, the error was harmless and the district court cured any prejudicial effect by providing a limiting jury instruction.[1] We do not agree. In the Eleventh Circuit, evidentiary errors require a new trial

---

[1]　Oxygen Frog also argues that any error associated with the admission of Mr. Piebes' testimony was harmless "because the jury did not decide the ultimate issue of obviousness and invalidity . . . [and any] prejudice was cured by the Court because the Court made its own independent analysis of obvious[ness]." Appellees' Br. at 33–34. Although the issue of obviousness is a legal one, it is an issue that may be properly submitted to, and decided by a jury. *See R.R. Dynamics, Inc. v. A. Stucki Co.*, 727 F.2d 1506, 1515 (Fed. Cir. 1984). A district court's decision on a motion for judgment as a matter of law after a jury verdict of obviousness is not an independent inquiry. It does not convert the jury verdict into a bench trial.

"where the error has caused substantial prejudice to the affected party (or . . . affected the party's 'substantial rights' or resulted in 'substantial injustice')." *Peat, Inc. v. Vanguard Research, Inc.*, 378 F.3d 1154, 1162 (11th Cir. 2004). Here, the jury returned a verdict that claims 1 and 7 of both the '941 and '488 patents would have been obvious to a person of ordinary skill in the art. There is no way to know whether Mr. Piebes' improper testimony provided some or all of the basis for the jury's decision. Not only did the district court's admission of Mr. Piebes' improper testimony deprive HVO of its right to have the question of obviousness decided based on admissible, qualified expert testimony, it prejudiced HVO by not affording it the appropriate procedures for testing such testimony. *See, e.g.*, Fed. R. Civ. P. 26 (a)(2), (e). Those opinions are also subject to challenge under *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993). Because expert testimony on ultimate issues carries with it the potential to significantly impact a jury's decision, "the expert witness discovery rules are designed to allow both sides in a case to prepare their cases adequately and to prevent surprise." *Reese v. Herbert*, 527 F.3d 1253, 1266 (11th Cir. 2008). Mr. Piebes was not disclosed as an expert, and his testimony as to obviousness was not disclosed pursuant to expert discovery rules. Thus, HVO was significantly prejudiced by the testimony on the ultimate question of obviousness, which should only have been given by a qualified expert witness, with the expert discovery necessary to prepare its case and ensure the reliability and relevance of the testimony. This is not harmless error.

Although it may be possible for the district court to cure inadmissible testimony by, for example, instructing the jury to disregard it, the limiting instruction in this case was no cure. The district court cautioned the jury before the deposition was played:

> [Y]ou will decide as the fact-finder whether or not it was or was not obvious. Just because somebody

uses a word "obvious" when they testify, does not mean that they are making the decision or it's up to them to make the decision. And so I want to reiterate that that's a conclusion, decision that you will have to make one way or the other when you retire to begin your deliberations. With that said, a witness such as Mr. Piebes certainly can . . . explain to you . . . what he thinks would occur to him from his perspective would or would not be obvious.

S.A. 818. That instruction, however, improperly permits the jury to consider Mr. Piebes' testimony as evidence of obviousness and its underlying technical questions. In fact, this instruction—that it is for the jury, not a witness, to decide obviousness—is no different than an instruction for how a jury should consider *expert testimony*. Rather than ensure that the jury did not rely on Mr. Piebes' unqualified testimony regarding the issue of obviousness, the district court's instruction instead suggested that the jury may consider and weigh Mr. Piebes' testimony as to what he considered obvious. Admission of that testimony substantially prejudiced the outcome of the case. The error was not harmless and a new trial is necessary to correct it. Accordingly, the district court abused its discretion by admitting Mr. Piebes' testimony on the issue of obviousness and by denying HVO's motion for a new trial.

Having determined that the district court abused its discretion by denying HVO's motion for a new trial, and that a new trial is necessary, we need not reach the other issues presented on appeal.

## CONCLUSION

Because the district court abused its discretion by admitting lay witness testimony regarding obviousness, we reverse and remand for a new trial.

**REVERSED AND REMANDED**